**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-8730
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DIANA GONZALES BUCHANAN, FEDELL ANDERSON, VERNON
BONNER, and JOHN BUCHANAN,

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Western District of Texas
_____
November 29, 1995

Before REYNALDO G. GARZA, BARKSDALE, and EMILIO M. GARZA, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

Diana Gonzales Buchanan, John Buchanan, Vernon Bonner, and
Fedell Anderson appeal their convictions for various crimes arising
out of their involvement in a crack cocaine conspiracy.  We affirm
the convictions of all the co-defendants.  We affirm the sentences
of Diana Gonzales Buchanan, Vernon Bonner, and Fedell Anderson.  We
vacate John Buchanan's sentence on counts three and four, and
remand for resentencing on whichever charge the government chooses
to proceed with.  We affirm John Buchanan's sentence in all other
respects.

Diana and John Buchanan distributed crack cocaine out of their home in Houston. An informant, Ernest "Easy" McDay, began working with the Austin Police Department ("APD") to build a case against the Buchanans. McDay had served as a middleman on some of the Buchanans' Austin drug sales, and was facing drug charges of his own when he agreed to help APD. John Buchanan contacted McDay to broker a drug transaction with another party in Austin. Pursuant to this transaction, John Buchanan, Fedell Anderson, Lawrence Crane,[1] and Vernon Bonner drove to Austin in Anderson's 1985 Cadillac. The group drove to McDay's apartment, and Bonner and Crane conducted an armed sweep of the premises to make sure that no one else was present. John Buchanan and Anderson then entered, and McDay proceeded to set up the sale.

After making the sale, the group went to a night club. John Buchanan, Anderson, and McDay went inside, where McDay phoned his APD contact and reported what had transpired. McDay also informed his APD contact that the group was armed, possibly with automatic weapons, and that the car contained a large amount of crack cocaine. APD officers proceeded to the night club and began surveillance on Anderson's car. The officers testified that Crane never strayed more than a few feet from the car, standing next to or sitting inside the car at all times. Bonner apparently never exited the vehicle, but remained seated in the backseat of the car.

---

Lawrence Crane, a juvenile, was not a party to this proceeding.

The officers believed that the two men were guarding the car.

About forty-five minutes after the surveillance began, John Buchanan and Anderson exited the club, got back in the car, and proceeded up the street. Not far from the night club, a marked police car stopped the Cadillac. The police removed the men from the car and frisked each one, finding a loaded .380 caliber pistol in Crane's belt. In securing the car, the police also found a loaded, fully automatic 9 mm. weapon and a loaded, semi-automatic 9 mm. pistol with an extra magazine. The police arrested the four men and took the vehicle to the station, where the officers obtained a warrant to search the vehicle. The police found two baggies containing approximately 280 grams of crack cocaine "cookies" inside the left-rear fender well, under a plastic vent where the door closes.

About a week later, the Houston Police Department ("HPD") went to the Buchanans' home to execute an arrest warrant for Diana Buchanan on a state charge of "Combative Aggravated Assault."[2] The officers were not oblivious to the Buchanans' drug activities. The officers present were all members of a joint HPD and Bureau of Alcohol, Tobacco, and Firearms ("ATF") anti-gang task force, which had been investigating the Buchanans for several months. An informant had indicated that the Buchanans were supplying Houston gangs with large quantities of crack cocaine, and officers had

_____

[2] This arrest warrant was unrelated to John Buchanan's arrest in Austin. The warrant arose instead from allegations that Diana Buchanan had shot another woman at a taco stand.

attempted to negotiate an agreement to purchase six ounces of crack cocaine from the Buchanans. In addition, APD had contacted HPD concerning John Buchanan's arrest in Austin, and had indicated to HPD that drugs might be found at the Buchanan home.

Upon arriving at the Buchanan residence, the police knocked, identified themselves, and announced to Diana Buchanan that they were there to arrest her. While still outside the house, the officers heard commotion from within and, fearing the destruction of evidence, forcibly entered the residence. The officers secured Diana Buchanan, and immediately conducted a "protective sweep"[3] of the premises to make sure no other persons were present. During this sweep, the officers discovered, in plain view, two loaded assault-style rifles. Further, upon entering the kitchen, one of the officers observed several large baggies containing white powder residue on the kitchen counter. The officer also observed white powder and small "rock" chunks on the kitchen counter, floor, and in the sink. The officers believed these substances to be cocaine. A "field test" confirmed that the substance in the baggies was cocaine. After securing the residence, the officers obtained a search warrant. In the ensuing search, officers discovered paraphernalia used to manufacture crack cocaine and approximately 200 grams of crack and powder cocaine jammed into the toilet. The

---

See *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed. 2d 276 (1990) (defining a "protective sweep" as "a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others").

officers also seized a 1988 Jaguar and a 1985 Mercedes-Benz.

The district court charged the four defendants as follows: John Buchanan, Bonner, and Anderson with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count one); John Buchanan, Bonner, Anderson, and Diana Buchanan with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846 (count two), and with aiding and abetting each other in using or carrying a firearm during a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (count three); and John Buchanan with using and carrying a machine gun during a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (count four), possessing a machine gun, in violation of 18 U.S.C. § 922(o) (count five), and being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (count six). All four defendants were tried before a jury. The jury convicted John Buchanan on all six counts. Anderson and Bonner were found guilty on counts one, two, and three. Diana Buchanan was found guilty on count two.

## II

### A

Diana Buchanan contends that the district court erred in denying her motion to suppress evidence seized from her residence following her arrest. She argues that field testing the white powder residue contained in several clear plastic baggies, found on the kitchen counter of her home, constituted an impermissible

-5-

"search" in violation of her Fourth Amendment rights. Diana Buchanan maintains that all subsequently seized evidence of drug trafficking should have been excluded as the fruits of this unconstitutional search.

In reviewing a district court's denial of a motion to suppress evidence, we review factual findings for clear error and conclusions of law *de novo*. *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 2150, 128 L. Ed. 2d 876 (1994). We must view the evidence in the light most favorable to the party who prevailed below. *Id*. at 1147; *United States v. Ramirez*, 963 F.2d 693, 705 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 388, 121 L. Ed. 2d 296 (1992).

The exclusionary rule mandates that, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of [an] illegal search and seizure." *United States v. Calandra*, 414 U.S. 343, 347, 94 S. Ct. 613, 619, 38 L. Ed. 2d 561 (1974). Under the Fourth Amendment, "searches conducted outside the judicial process, without prior approval by judge or magistrate are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967) (footnotes omitted). The "plain view" doctrine is one of the "specifically established and well-delineated exceptions" that may justify a warrantless seizure. *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S. Ct. 1149, 1153, 94 L. Ed. 2d 347

(1987) ("It is well established that under certain circumstances the police may seize evidence in plain view without a warrant.") (citation and internal quotation marks omitted). The "plain view" doctrine may also validate a warrantless *search* of an item, so long as the item could lawfully have been seized. *See Hicks*, 480 U.S. at 326, 107 S. Ct. at 1153 ("It would be absurd to say that an object could lawfully be seized and taken from the premises, but could not be moved for closer examination.") Thus, to determine if the field test was a permissible warrantless search, we must determine if the officers could have lawfully seized the white powder residue contained in the plastic baggies.

The "plain view" doctrine will justify a warrantless seizure if: (1) the officers lawfully entered the area where the items were located; (2) the items were in plain view; (3) the incriminating nature of the items was "immediately apparent"; and (4) the officers had a lawful right of access to the items. *Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112 (1990). Diana Buchanan does not challenge the validity of the arrest warrant, the officers' entry into her home, or the protective sweep of her house. Therefore, the applicability of the plain view exception in this case turns on whether the incriminating nature of the white powder residue was "immediately apparent" to the officers. *Horton*, 496 U.S. at 136-37, 110 S. Ct. at 2308.

The incriminating nature of an item is "immediately apparent"

if the officers have "probable cause" to believe that the item is either evidence of a crime or contraband.  *Hicks*, 480 U.S. at 326-27, 107 S. Ct. at 1153.  Probable cause does not require certainty.  *See Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983) (holding that probable cause "does not demand any showing that such a belief be correct or more likely true than false").  In reviewing probable cause determinations, we must consider the totality of the circumstances))including the officers' training and experience as well as their knowledge of the situation at hand.  *See United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) (holding that a probable cause determination "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search"), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1331, 127 L. Ed. 2d 378 (1994); *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983) (holding that a probable cause determination should consider "the facts and circumstances known to the officer, and of which he has reasonably trustworthy information").

The officers who executed the arrest warrant for Diana Buchanan were experienced members of an HPD-ATF anti-gang task force.  They were aware of purported drug activity at the Buchanan residence, and had been investigating the Buchanans for several months.  The officers were also aware that Diana Buchanan's husband had just been arrested in Austin on drug and gun charges.  When the police officers knocked on the door and announced their presence,

they heard commotion within the house. Upon entry, the officers conducted a protective sweep during which they observed two assault-style rifles, white powder and small rock crumbs on the kitchen counter, floor, and sink, and several clear plastic bags containing a white powder residue.[4] Based upon the totality of these circumstances, we hold that the officers had probable cause to believe that the white powder residue contained in the plastic baggies was contraband or evidence of a crime.[5] Accordingly, the officers could have lawfully seized the items. *See Brown*, 460 U.S. at 740-43, 103 S. Ct. at 1542-43 (upholding plain view seizure of "opaque, green party balloon" where presence of additional drug paraphernalia along with officer's knowledge that balloons were commonly used to transport narcotics amounted to probable cause).

Since the plain view doctrine would have supported a warrantless seizure of the evidence, a warrantless search of the items was also permissible.[6] *Hicks*, 480 U.S. at 326, 107 S. Ct. at

---

According to the record, the officer who first entered the kitchen during the protective sweep stated that it was "obvious" that cocaine residue and small chunks of rock cocaine were "all over the kitchen."

We emphasize that the fact that the officers chose to field test the substance does not indicate that they lacked probable cause to believe the residue was contraband. Testing for certainty's sake will not, by itself, undermine an otherwise valid probable cause determination. *Cf*. *United States v. Prandy-Binett*, 995 F.2d 1069, 1073 (D.C. Cir. 1993) ("If [the defendant's] perfume bag held clear ziplock bags containing white powder, the detectives also would not have been sure whether he possessed cocaine or heroin (or some innocuous substance). Yet that cannot be a reason for finding no probable cause."), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1196, 127 L. Ed. 2d 545 (1994).

This opinion should not be read to hold that the mere presence of white powder residue in a plastic bag, by itself, will always give rise to probable cause. We hold only that under the circumstances of the present case, the incriminating nature of the evidence found in plain view was "immediately

-9-

1153. Accordingly, we hold that the district court did not err in admitting the evidence seized from the Buchanan residence subsequent to the field test.[7]

B

Diana Buchanan next argues that the district court erred when it admitted into evidence two taped conversations between her and an HPD officer. Diana Buchanan maintains that the recording was never properly authenticated. A district court has broad discretion in determining whether or not a sound recording should be admitted. *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977). We will find error only where the district court abuses this discretion. *United States v. Eakes*, 783 F.2d 499, 506-07 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S. Ct. 3277, 91 L. Ed. 2d 567 (1986).

The government has the burden of demonstrating that the recording, as played, "is an accurate reproduction of relevant sounds previously audited by a witness." *Biggins*, 551 F.2d at 66. Generally, this burden requires the government to demonstrate (1) the operator's competency, (2) the fidelity of the recording

---

apparent." This factor distinguishes this case from the situation in *Hicks*. In *Hicks*, the officer's search of the stereo was improper because, based upon his knowledge and experience, he lacked probable cause to suspect that the equipment was stolen or evidence of a crime. *See Hicks*, 480 U.S. at 328, 107 S. Ct. at 1154 (holding that "probable cause to believe the equipment was stolen was required" to justify officer's search of stereo found in plain view).

John Buchanan also asserts that the district court erred in admitting the evidence discovered subsequent to the field test at the Buchanan residence. Having held that the evidence was lawfully admitted, we need not address this argument.

equipment, (3) the absence of material alterations, and (4) the identification of relevant sounds or voices. *Id.; United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992). Although compliance with the *Biggins* requirements is the "preferred method" of proceeding, strict compliance is not required. *See Biggins*, 551 F.2d at 67 ("[The district court's] discretion is not to be sacrificed to a formalistic adherence to the standard we establish."). The district court may admit the recording in the absence of these requirements if, upon independent examination, the district court is convinced that "the recording accurately reproduces the auditory experience." *Stone*, 960 F.2d at 436 (citation omitted).

The recording in question includes two conversations in which an undercover officer discusses purchasing cocaine with Diana Buchanan. At the conclusion of each conversation, another voice indicates the date and time of the conversations. Testimony established that both officers present during the recording (an undercover officer who attempted to negotiate the drug purchase and the officer who indicated the time and date of the conversations) could hear the conversations as they occurred. The officer who gave the time and date of the conversations testified that he had reviewed the tape being offered and could confirm that the tape was indeed the one that he and the undercover officer had made, and that the recording accurately represented the conversations as they occurred. Further, this officer testified that after speaking with Diana Buchanan during her arrest, he was "convinced" that the voice

-11-

on the tape was Diana Buchanan's.  Although the district court did not elicit testimony as to all the *Biggins* elements, the officer sponsoring the recording gave adequate testimony to support the recording's reliability.  All the voices were identified, and there was no intimation that the tape had been altered.  Further, the testifying officer explained how the recording was made, and testified as to its accuracy.  Accordingly, we cannot say that the district court abused its discretion in admitting the tape as an accurate reproduction of relevant conversations.  *See United States v. Lance*, 853 F.2d 1177, 1181-82 (5th Cir. 1988) (holding recordings properly authenticated where "law enforcement agents who participated in the taped conversations testified that, according to their memories, the audio and video tapes contained accurate recordings of the conversations that occurred").

C

Diana Buchanan next argues that the district court erred in increasing her offense level for "possession of a firearm" where the jury acquitted her on the charge of aiding and abetting in using or carrying a firearm during a drug-trafficking offense (count three).  *See* U.S.S.G., § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.").  The district court's decision to apply § 2D1.1(b)(1) "is essentially a factual determination reviewable under the clearly erroneous standard."  *United States v. Rodriguez*, 62 F.3d 723, 724 (5th Cir. 1995).

The fact that the jury found Diana Buchanan not guilty of using or carrying a firearm during a drug-trafficking offense, does not bar the district court from increasing Diana Buchanan's offense level under § 2D1.1(b)(1). While a conviction requires proof beyond a reasonable doubt, a district court may sentence a defendant within the Sentencing Guidelines on any relevant evidence that "has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *United States v. Edwards*, 65 F.3d 430, 432 (5th Cir. 1995). The police found two assault-style weapons at Diana Buchanan's house. The police testified that Diana Buchanan made statements indicating that she knew how to use these weapons, and that she had contemplated firing them at police. Police testimony also indicated that Diana Buchanan had used firearms in the past, and reasonably knew that her co-conspirators were carrying weapons in Austin. Judging from the record, the district court's § 2D1.1(b)(1) two-level enhancement for possession of a firearm was not clearly erroneous.[8] In sentencing, "a

---

We distinguish this case from *United States v. Pofahl*, 990 F.2d 1456 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 266, 126 L. Ed. 2d 218 (1993). In *Pofahl*, we held that where there is a factual dispute as to whether a defendant "possessed" a gun within the meaning of § 2D1.1(b)(1), FED. R. CRIM. P. 32(c)(3)(D) requires the district court to either make a specific finding or indicate that the firearm will not be used to enhance the defendant's sentence. *Pofahl*, 990 F.2d at 1486. Here, however, Diana Buchanan's only objection to the findings in the presentence report was based on her acquittal of the charge of using or carrying a firearm during a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). The fact that the jury acquitted Diana Buchanan on this charge does not, without more, amount to a factual dispute with the presentence report that Diana Buchanan possessed a firearm within the meaning of § 2D1.1(b)(1). The district court adopted the findings in the presentence report. Without a specific factual controversy, further factual findings under FED. R. CRIM. P. 32(c)(3)(D) are not required. *Compare United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990) (holding that where defendant did not offer any rebuttal evidence to refute presentence report, "district court . . . was free to adopt facts in PSI without further inquiry") *with Pofahl*, 990 F.2d at 1486

district court has wide discretion in determining which evidence to consider and which testimony to credit." *Edwards*, 65 F.3d at 432. Accordingly, we hold that the record in this case provides ample evidence to support a § 2D1.1(b)(1) enhancement of Diana Buchanan's offense level. *See, e.g.*, *Rodriguez*, 62 F.3d at 724-25 (holding that so long as weapon was accessible to defendant, fact that it was never brandished and was unloaded does not negate a finding of possession under § 2D1.1(b)(1)).[9]

---

(remanding for specific findings under FED. R. CRIM. P. 32(c)(3)(D) where defendant objected to § 2D1.1(b)(1) enhancement for possession of a firearm that he claimed "belonged to his roommate," and district court failed to make any findings on this point).

Diana Buchanan also argues that the district court abused its discretion in sentencing her to the maximum possible sentence under the guidelines "in light of the unusual and tragic circumstances of Mrs. Buchanan's background," or, in the alternative, that the district court should have departed from the guidelines in sentencing her. There is no evidence that the district court failed to take into account Diana Buchanan's "tragic circumstances." The presentence report develops these factors, and the district court recognized that Diana Buchanan had travelled a "rocky road." Nevertheless, the district court felt that the maximum sentence was the appropriate punishment. Judging from the record, we cannot say the district court abused its discretion by giving the maximum sentence. So long as the district court acts within the guidelines, a harsh sentence, in and of itself, does not constitute error. *See United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990) ("[W]e will uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous.") (citation and internal quotations omitted), *cert. denied*, 499 U.S. 940, 111 S. Ct. 1398, 113 L. Ed. 2d 453 (1991). To the extent that Diana Buchanan is attempting to contest the district court's implicit decision not to depart from the guidelines, we have previously held that the district court's decision not to depart is unreviewable on appeal. *United States v. Leonard*, 61 F.3d 1181, 1185 (5th Cir. 1995). Diana Buchanan, along with John Buchanan, also urges that the vast disparity between the sentencing ranges for crack and powder cocaine, mandated by the guidelines, violates equal protection principles contained in the Fifth Amendment. We have repeatedly rejected this argument and do so again. *See United States v. Cooks*, 52 F.3d 101, 105 (5th Cir. 1995) (holding that the guidelines' stiffer penalties for cocaine base do not violate equal protection); *United States v. Cherry*, 50 F.3d 338, 344 (5th Cir. 1995) ("The 100 to one ratio is extreme, but it is not the province of this Court to second-guess Congress's chosen penalty. That is a discretionary legislative judgment for Congress and the Sentencing Commission to make."); *United States v. Watson*, 953 F.2d 895, 897-98 (5th Cir.) (holding that "no unconstitutional infirmity exists in the Sentencing Guidelines' treatment of crack vis-a-vis powder cocaine"), *cert. denied*, 504 U.S. 928, 112 S. Ct. 1989, 118 L. Ed. 2d 586 (1992).

III

A

John Buchanan argues that the district court improperly enhanced his sentence for being the "organizer or leader" of the drug-trafficking organization. *See* U.S.S.G. § 3B1.1 ("If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."). John Buchanan argues that no organization existed, and that if one did exist, it did not include five or more participants. Normally, we review a district court's finding concerning a defendant's role in the offense for clear error. *United States v. Bethley*, 973 F.2d 396, 401 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1323, 122 L. Ed. 2d 709 (1993). In this case, however, John Buchanan failed to object to the district court's findings, and thus we review for plain error. *United States v. Lopez*, 923 F.2d 47, 49 (5th Cir.), *cert. denied*, 500 U.S. 924, 111 S. Ct. 2032, 114 L. Ed. 2d 117 (1991). Plain errors are errors which are both obvious and which affect the defendant's substantial rights. *United States v. Calverley*, 37 F.3d 160, 163-64 (5th Cir. 1994) (*en banc*), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1266, 131 L. Ed. 2d 145 (1995). Upon a showing of plain error, an appellate court is empowered, but is not required, to correct the error. *Id*. at 164. We will only correct a plain error if it seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Id*.

The district court found that the drug distribution organization in this case consisted of John Buchanan, Diana Buchanan, Bonner, Anderson, and McDay. The presentence report also included several other regular purchasers from the Buchanans, and "other confidential informants in Houston, Texas." Judging from the record, we cannot say that these findings amounted to plain error. There was ample evidence to support the district court's finding that a drug-trafficking organization of five or more persons existed. Further, there was ample evidence that John Buchanan was the leader of this group. Testimony indicated that Crane and Anderson worked as "bodyguards" for John Buchanan, and that John Buchanan directed their actions. McDay's testimony confirmed that on the night of the arrest in Austin, John Buchanan gave the others instructions, and they followed those instructions. Testimony also indicated that John Buchanan had control over the sale of drugs by his wife, Diana Buchanan. We hold that the district court did not commit plain error in finding John Buchanan to be the organizer or leader of this drug-trafficking group. *See* U.S.S.G. § 3B1.1 comment. (n.4) ("Factors the court should consider include the exercise of decision making authority . . . and the degree of control and authority exercised over others."); *see also United States v. Fierro*, 38 F.3d 761, 774 (5th Cir. 1994) (refusing to consider whether district court erred in its factual findings at sentencing because the defendant failed to object to the district court's factual findings and "questions of fact capable of

resolution at sentencing can never constitute plain error"), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1431, 131 L. Ed. 2d 312 (1995).[10]

B

John Buchanan next argues that his conviction on counts three and four, both for using or carrying a firearm during a drug-trafficking offense, violated the Double Jeopardy Clause. Count three charged John Buchanan with violating 18 U.S.C. § 924(c) for aiding and abetting in using or carrying two semi-automatic pistols during the crime of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Count four charged John Buchanan with violating 18 U.S.C. § 924(c) for using or carrying a machine gun during the same predicate crime (possession with intent to distribute cocaine base) relied on in count three. As we have previously held, use of more than one gun during a single drug-trafficking offense will not support multiple counts under 18 U.S.C. § 924(c). *United States v. Privette*, 947 F.2d 1259, 1262 (5th Cir. 1991), *cert. denied*, 503 U.S. 912, 112 S. Ct.

---

John Buchanan argues that the punishment disparity between crack and powder cocaine constitutes racial discrimination in violation of his Fifth Amendment right to equal protection, and constitutes cruel and unusual punishment in violation of the Eighth Amendment. John Buchanan also argues that the guideline applicable to crack cocaine is unconstitutionally vague. We have consistently rejected these arguments and do so again. *See supra* note 9; *see also United States v. Cherry*, 50 F.3d 338, 342-44 (5th Cir. 1995) (holding that the sentencing guidelines' disparate treatment of crack cocaine is not racially discriminatory under the Fifth Amendment's equal protection guarantees); *United States v. Fisher*, 22 F.3d 574, 579-80 (5th Cir.) (holding that stiffer penalties for cocaine base transactions "are not grossly disproportionate to the severity of the offense" and, therefore, do not violate Eighth Amendment), *cert. denied*, ___ U.S. ___, 115 S. Ct. 529, 130 L. Ed. 2d 433 (1994); *United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir. 1991) (holding that the statute and sentencing guidelines applicable to crack cocaine "have a reasonable basis and are not vague under commonly understood usages"), *cert. denied*, 502 U.S. 1038, 112 S. Ct. 887, 116 L. Ed. 2d 791 (1992); *Fisher*, 22 F.3d at 579 (rejecting vagueness challenge to the guideline applicable to crack cocaine).

-17-

1279, 117 L. Ed. 2d 505 (1992). Counts three and four linked the § 924(c) gun charge to the same underlying drug offense))possession with intent to distribute cocaine base. Accordingly, we hold that sentencing John Buchanan on both count three and count four violated double jeopardy principles.[11] The proper remedy is to vacate John Buchanan's sentence on counts three and four and remand for resentencing on whichever count the government chooses to proceed with. *Id*. at 1263. We affirm John Buchanan's sentence in all other respects.[12]

---

[11]   In its brief the government concedes that sentencing John Buchanan on both counts three and four violated double jeopardy principles.

   John Buchanan also argues that his sentences under counts five and six were duplicitous of the firearm charge contained in counts three and four. This argument lacks merit. Counts three and four, applying 18 U.S.C. § 924(c), required only that the defendant use or carry a firearm during a drug-trafficking offense. Count five, alleging violation of 18 U.S.C. § 922(o), required the possession of an automatic weapon; and count six, applying 18 U.S.C. § 922(g)(1), required that the defendant not only possess a firearm, but that he also be a convicted felon. Thus counts five and six involve distinct elements not required by counts three and four. Under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 2d 306 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."), John Buchanan's sentences under counts five and six do not violate double jeopardy principles.   We also reject John Buchanan's contention that the imposition of a civil forfeiture penalty, the loss of a 1985 Mercedes and a 1988 Jaguar, constituted double jeopardy and violated the Eighth Amendment prohibition against excessive fines.   As we have previously held, the forfeiture of drug proceeds does not constitute punishment, and thus neither the Eighth Amendment prohibition against excessive fines nor double jeopardy analysis is applicable. *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 574, 130 L. Ed. 2d 490 (1994).   Even if these automobiles were not drug proceeds, so long as the amount forfeited was rationally related to the governmental and societal losses associated with John Buchanan's criminal activity, double jeopardy will not bar subsequent punishment. *Department of Revenue of Montana v. Kurth Ranch*, ___ U.S. ___, ___, 114 S. Ct. 1937, 1945, ___ L. Ed. 2d ___ (1994); *United States v. Halper*, 490 U.S. 435, 448-49, 109 S. Ct. 1892, 1902, 104 L. Ed. 2d 487 (1989); *Tilley*, 18 F.3d at 299-300.   In addition, the Eighth Amendment only bars excessive fines. *United States v. Austin*, ___ U.S. ___, ___, 113 S. Ct. 2801, 2812, 125 L. Ed. 2d 488 (1993).   We hold that the forfeiture of these two automobiles, even when combined with the other punishments in this case, did not constitute excessive punishment.   Nor did the forfeiture put John Buchanan in double jeopardy.   The value of these automobiles was rationally related to the governmental and societal losses associated with

-18-

Bonner argues that the district court erred in overruling his FED. R. EVID. 404(b) objection and admitting evidence of his prior cocaine delivery conviction. The district court admitted the evidence as relevant to Bonner's "motive," "state of mind," or "intent" because Bonner's defense was that he was an innocent bystander. We review the district court's admission of prior convictions over objection under a heightened abuse of discretion standard. *United States v. Wisenbaker*, 14 F.3d 1022, 1028 (5th Cir. 1994); *United States v. Carrillo*, 981 F.2d 772, 774 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 115 S. Ct. 261, 130 L. Ed. 2d 181 (1994). Extrinsic offense evidence is properly admitted under Rule 404(b) only if: (1) it is relevant to an issue other than the defendant's character, and (2) its probative value is not substantially outweighed by its undue prejudice. *United States v. Ponce*, 8 F.3d 989, 993 (5th Cir. 1993); *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S. Ct. 1244, 59 L. Ed. 2d 472 (1979).

Evidence is relevant "if it makes the existence of any fact at issue more or less probable than it would be without the evidence." *United States v. Williams*, 900 F.2d 823, 826 (5th Cir. 1990). As we stated in *Beechum*, "[i]t is derogative of the search for truth

---

the Buchanans' crack cocaine operation. After careful review of the record, we find the remainder of John Buchanan's claims to be without merit.

to allow a defendant to tell his story of innocence without facing him with evidence impeaching that story." 582 F.2d at 909. Evidence that Bonner was previously convicted of a cocaine delivery offense tends to refute his story that he was merely "in the wrong place at the wrong time," and makes it more probable that he had the requisite "state of mind" or "intent" to participate in the present cocaine-related offenses.[13] *See United States v. Cheramie*, 51 F.3d 538, 541-42 (5th Cir. 1995) (holding evidence of prior drug sales admissible under 404(b) to show "knowledge" and "intent" where defendant claimed he did not know that the gym bag he took possession of contained two kilograms of cocaine). Accordingly, we hold that the district court did not abuse its discretion in finding Bonner's prior drug offense relevant to the case at hand.

After finding Bonner's prior conviction relevant, the district court weighed the conviction's probative value against its possible prejudicial effects. The probative value of extrinsic offense evidence "must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *Beechum*, 582 F.2d at 914; *Williams*, 900 F.2d at 827; *see also United States v. Henthorn*, 815 F.2d 304,

---

Bonner argues that we should evaluate the relevance of the prior conviction as to each distinct count of the indictment. We decline to do so. Bonner offered the same defense to all counts of the indictment: that he was an innocent bystander. The prior conviction is relevant to show that Bonner did not innocently accompany his co-defendants, and this extends to all counts for which Bonner was charged as a member of the conspiracy (possession of crack cocaine with intent to distribute, conspiracy to possess with intent to distribute, and aiding and abetting in using or carrying a firearm during a drug-trafficking offense).

-20-

308 (5th Cir. 1987) (indicating that the probity analysis "hinges upon the government's need for the testimony"). Because the prosecution's other admitted evidence shed little light on Bonner's "state of mind" or "intent,"[14] the probative value of the extrinsic offense evidence was greater. *See Williams*, 900 F.2d at 827 (noting that "limited evidence the government could . . . adduce on the issues of knowledge and intent increases the incremental probity of the extrinsic evidence"); *see also Beechum*, 582 F.2d at 914-15 (discussing incremental probity of extrinsic evidence in relation to other admissible evidence). Bonner's entry of a not guilty plea and his attack on McDay's credibility also enhances the probity of the prior offense evidence by placing his intent and state of mind at issue.[15] *See Henthorn*, 815 F.2d at 308 (finding probative value of extrinsic offense evidence outweighed possible prejudice where defendant pleaded not guilty and attacked the credibility of witnesses). Although the danger of prejudice associated with prior conviction evidence is often great, the district court in this case substantially reduced the possibility of prejudice to Bonner by carefully instructing the jury on how they could consider the evidence. *See id*. at 304 (finding that

---

Without the admission of the prior drug conviction, the government's evidence as to Bonner's state of mind would have been limited to McDay's testimony concerning Bonner's use of a gun in sweeping his apartment, the officers' observations at the night club, Bonner's presence in the car, and Bonner's thumbprint on one of the gun magazines.

We have previously held that in conspiracy cases "the mere entry of a not guilty plea sufficiently raises the issue of intent to justify the admissibility of extrinsic offense evidence." *United States v. Prati*, 861 F.2d 82, 86 (5th Cir. 1988).

-21-

careful jury instructions minimized possibility of prejudice)*; see also United States v. Gordon*, 780 F.2d 1165, 1174 (5th Cir. 1986) (holding improper admission of extrinsic evidence may be cured by adequate limiting instruction). Based upon the foregoing considerations, we hold that the district court did not abuse its discretion in finding that the probative value of Bonner's prior drug conviction outweighed the danger of undue prejudice. Accordingly, we hold that the district court did not err in admitting the evidence of Bonner's prior drug conviction.

### B

Bonner next argues that the district court erred in admitting the opinion testimony of two APD officers.[16] We review the district court's evidentiary rulings for abuse of discretion. *United States v. Speer*, 30 F.3d 605, 609 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 768, 130 L. Ed. 2d 664 (1995). The admission of the officers' opinion testimony is appropriately examined under the standard governing testimony of expert witnesses.[17] Expert

---

When asked about the significance of observing Bonner and Crane in the car outside the nightclub, one officer testified that "[i]t appeared that those two people were protecting something in that car." The second officer stated his opinion that it would be unreasonable for persons trafficking crack cocaine worth $30,000 to have an uninvolved "outsider" in the car. Bonner timely objected to these answers as improper opinion testimony, but in both instances the district court overruled the objections.

Bonner contends that the government did not qualify or proffer the police officers as expert witnesses, and that their testimony must, therefore, be reviewed as opinion testimony of lay witnesses. We disagree. "If scientific, technical, *or other specialized knowledge* will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, *experience*, training or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702 (emphasis added). The record reflects that the prosecution qualified the officers as experts during direct examination by questioning them and eliciting responses as

-22-

witnesses are permitted to express opinions or inferences that "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. In situations such as the present case, "The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 2011, 131 L. Ed. 2d 1010 (1995); *see United States v. Fleishman*, 684 F.2d 1329, 1335-36 (9th Cir.) (finding no error in admission of agent's testimony that defendant acted as a "lookout" for drug transaction), *cert. denied*, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed. 2d 614 (1982).

The record reflects that both testifying officers were experienced in investigating narcotics trafficking and drug-related crimes.[18] Because of their experiences, the officers were familiar with certain conduct and methods of operation unique to the drug distribution business, including the methods used by drug dealers to protect their illegal investments. The first officer testified that, in his opinion, Bonner's and Crane's actions indicated that

to their experience and qualifications.

The first officer, a 15-year veteran of the APD, was assigned to the repeat offender program and testified as to his "experience and training" in investigating drug-trafficking crimes. The second officer, a 12-year veteran, had served as a narcotics investigator for six and one-half years prior to his testimony.

they were guarding the car. This type of testimony is permissible because it is based on specialized knowledge, and is admitted to aid the jury in understanding a fact in issue))whether Bonner's presence with the drugs was innocent or not. The second officer testified that, based on his experience, a person transporting $30,000 worth of crack cocaine and multiple firearms would not allow a complete outsider to ride in the car. This testimony was also permissible opinion testimony, based on the officer's specialized knowledge.[19] It aids the jury in understanding the significance of Bonner's presence in a car laden with narcotics and weapons.[20] FED. R. EVID. 702; *Washington*, 44 F.3d at 1283. Accordingly, we hold that the district court did not abuse its

---

We also reject Bonner's argument that this testimony was impermissible "profile evidence." In this case, the government did not seek to prove guilt by showing how a defendant fit a list of characteristics making up the "profile" of a drug courier. *See United States v. Williams*, 957 F.2d 1238, 1241 (5th Cir. 1992) (holding testimony impermissible where officer "described the profile itself and then proceeded to list the characteristics of the profile that [the defendant] displayed"). Rather, in this case the government offered the officer's testimony to indicate that Bonner's actions were inconsistent with his claim that he was an innocent bystander. *See Washington*, 44 F.3d at 1283 & n.44 (holding "five 'expert' opinions by two government agents and the [confidential informant] regarding the operations and methods of drug trafficking" not impermissible profile evidence "because it was not offered for that purpose").

Bonner also contends that the officers' opinions amounted to testimony as to his guilt. Since the determination of guilt is solely within the province of the trier of fact, an expert witness cannot give an opinion as to a criminal defendant's mental state or condition. FED. R. EVID. 704(b). However, opinion testimony is permitted in regard to other ultimate issues. FED. R. EVID. 704(a). Rule 704(a) provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id*. We have previously recognized the difference between an impermissible opinion on an ultimate legal issue and "a mere explanation of the expert's analysis of facts which would tend to support a jury finding on the ultimate issue." *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994). We hold that the opinion testimony in question falls into the latter category, and was merely an analysis of the evidence in light of the officers' specialized knowledge of drug trafficking.

discretion in admitting the officers' opinion testimony into evidence.[21]

                                    V

Anderson argues that the district court misapplied the Sentencing Guidelines in calculating his base offense level. Anderson maintains that the district court erred in attributing to him the drugs seized from the Buchanan residence in Houston.[22] A district court's findings about the quantity of drugs upon which a sentence should be based are factual findings, which we review for clear error. *United States v. Palamo*, 998 F.2d 253, 258 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 358, 126 L. Ed. 2d 322 (1993); *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990), *cert. denied*, 499 U.S. 940, 111 S. Ct. 1398, 113 L. Ed. 2d 453 (1991). The Sentencing Guidelines allow a district court "to hold a defendant accountable for all relevant conduct." *United States v. Maseratti*, 1 F.3d 330, 340 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1096, 127 L. Ed. 2d 409 (1994). Under the

_____

Bonner further argues that the cumulative effect of the district court's evidentiary errors amounted to reversible error. Finding no evidentiary errors, we reject this contention.

In response to Anderson's objection to having the Houston drugs included in his sentence, the probation officer stated that Anderson's involvement in the conspiracy was extensive enough that the substances seized in Houston were attributable to him. The district court agreed, stating that:

There's no question in my mind that the jury was correct in convicting Mr. Anderson of the conspiracy. The presentence investigation shows Mr. Anderson's relation to the Buchanans going back to 1987. There's no question that any of the narcotics found in that room or house in Houston were part of the conspiracy that had been going on for a long period of time and Mr. Anderson was part of it.

Sentencing Guidelines, a co-conspirator is liable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). A conviction for conspiracy, however, "does not automatically mean that every conspirator has foreseen the total quantity of drugs involved in the entire conspiracy." *United States v. Smith*, 13 F.3d 860, 867 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 2151, 128 L. Ed. 2d 877 (1994). We have previously held that attributing the acts of others to a co-conspirator in sentencing requires (1) that the acts be reasonably foreseeable, and (2) that they be within the scope of the jointly undertaken criminal activity. *See Smith*, 13 F.3d at 866 (reversing defendant's sentence because district court erred in attributing drugs to defendant where defendant had not jointly undertaken the criminal activity involving those particular drugs); *Maseratti*, 1 F.3d at 340 (remanding for determination of each defendant's role in the conspiracy in order to determine the amount of drugs attributable to each).

In this case, there was evidence that Anderson had been involved with the Buchanans since 1987. Testimony indicated that Anderson always accompanied John Buchanan on his trips to deliver drugs in Austin, serving as John Buchanan's bodyguard and "right-hand man." Officers testified that they had observed Anderson's maroon Cadillac parked in the Buchanans' driveway in Houston, and it was Anderson's car, driven by Anderson from Houston, that was

used to transport the 280 grams of crack cocaine recovered in Austin. Judging from the record, we cannot say the district court erred in attributing the drugs seized from the Buchanan residence in Houston to Anderson.[23] Anderson's involvement in this conspiracy seems to have been co-extensive with the Buchanans. Having often transported drugs from the Buchanan residence to Austin, it was not only foreseeable that the Buchanans would have a significant amount of drugs in their Houston home, but the presence of those drugs fits squarely within the pattern of drug distribution evinced by the actions of the conspirators in this case. *See* U.S.S.G. § 1B1.3, comment. (n.2(ii)) ("In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake . . . the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others."). Accordingly, we affirm the district court's decision to attribute the cocaine seized in Houston to Anderson in calculating his base offense level, and uphold his sentence.[24]

---

Anderson argues that further evidence of his lack of involvement with the drugs seized in Houston is the significant difference in chemical purity of those drugs as compared to the crack seized in Austin (80-85% pure in Austin, 62-70% pure in Houston). The divergence in purity between different quantities of drugs, however, will not negate a finding that the drugs are attributable to a co-conspirator if the test set forth in the guidelines is met. *See Smith*, 13 F.3d at 864-65 (upholding district court's decision to attribute quantity of drugs to a co-conspirator despite differences in the drugs' "color and purity" because the drugs were reasonably foreseeable and within the scope of the conspirators' agreement).

We also reject Anderson's contention that the district court erred in admitting his prior drug possession convictions as evidence of intent or state of mind. *See supra* Part IV(A). Anderson put his state of mind and intent into issue by pleading not guilty and claiming that he had not intended to possess the

VI

For the foregoing reasons, we AFFIRM the convictions of all co-defendants.  We AFFIRM the sentences of Diana Buchanan, Vernon Bonner, and Fedell Anderson.  We VACATE John Buchanan's sentence on counts three and four and REMAND for resentencing on whichever count the United States chooses to proceed with.  We AFFIRM John Buchanan's sentence in all other respects.

---

crack cocaine or participate in the conspiracy.  The prior drug possession convictions, however, make it more likely that Anderson had knowledge of and intended to participate in the crimes committed by this group. *See United States v. Willis*, 6 F.3d 257, 262 (5th Cir. 1993) (holding prior drug convictions relevant to show that defendant had knowledge and intent necessary to possess drugs at issue in case); *United States v. Gadison*, 8 F.3d 186, 192 (5th Cir. 1993) ("A prior conviction for possession of cocaine is probative of a defendant's intent when the charge is conspiracy to distribute.").  We also reject Anderson's contention that because his prior conviction was six years old, it was too remote in time to have sufficient probative value to outweigh its prejudicial effect. *See United States v. Rubio-Gonzales*, 674 F.2d 1067, 1075 (5th Cir. 1982) (allowing ten-year-old conviction to be admitted as relevant to knowledge).  The district court carefully considered the possible prejudice of admitting the prior crimes evidence and determined that it did not substantially outweigh the evidence's probative value.  The district court further mitigated any undue prejudice by carefully instructing the jury on how it could consider this evidence.  For these reasons we cannot say that admitting these convictions for the limited purpose of showing Anderson's state of mind or intent constituted an abuse of discretion.