IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-60007
Summary Calendar

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN CORNELIUS FOWLER;
REGINALD WAYNE IKNER, also
known as "Reggie,"

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Southern District of Mississippi
USDC No. 3:98-CR-53-2-LN
_____

May 19, 2000

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

John Cornelius Fowler and Reginald Wayne Ikner appeal their
convictions for possession with intent to distribute cocaine base
("crack") in violation of 21 U.S.C. § 841(a)(1), and Ikner also
appeals his conviction for possession of a firearm in relation to
a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

The government has moved to dismiss Ikner's appeal as
untimely. Ikner's amended judgment was entered on January 11,
1998. Ikner did not file a notice of appeal until April 20, 1999.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Fed. R. App. P. 4(b) requires that the notice of appeal in a criminal case be filed by a defendant within ten days of entry of the judgment or order from which appeal is taken.  A timely notice of appeal is a mandatory precondition to the exercise of appellate jurisdiction.  United States v. Merrifield, 764 F.2d 436, 437 (5th Cir. 1985).  The tenth day in this case was January 21.

On January 22, 1999, the eleventh day and one day too late for filing a notice of appeal, Ikner filed a motion for transcript, a motion to proceed on appeal in forma pauperis ("IFP"), and a motion for enlargement of time or in the alternative a stay.  The district court denied all three motions.  The district court advised Ikner to consult Fed. R. App. P. 4(1) and (5) if he intended to seek additional time to file a notice of appeal.  This order was entered on February 16, 1999.

The district court's reference to Rule 4 concerned the provision in Rule 4(b), which allows the district court to grant an additional 30 days in which to file a notice of appeal upon a showing of excusable neglect.  The thirty-day period in which to seek the district court's ruling on excusable neglect in this case expired on February 22.  In spite of the district court's warning, Ikner took no further action until March 2, 1999, when he filed a second motion for IFP and a motion for enlargement of time or a stay.  Again, the motion for enlargement of time merely sought additional time to obtain new counsel.

2

The district court granted IFP but denied the motion for enlargement of time. The district court stated that even if Ikner's first motion for enlargement of time had been construed as one for extension of time in which to file a notice of appeal, the court would not have concluded that the reasons given in the motion constituted excusable neglect. The district court noted that even to this day, Ikner had not filed a notice of appeal. The district court noted that Ikner still had time after it had denied his first motions in which to demonstrate excusable neglect and that he had not filed his second set of motions until after the thirty-day period had expired.

Ikner finally filed a notice of appeal on April 20, and he filed a motion to reinstate his right of appeal on April 22. The district court did not rule on this motion.

The Supreme Court, in a habeas corpus action instituted by a pro se inmate, held that a brief may serve as a notice of appeal if it is filed within the time allotted for filing a notice of appeal and gives the notice required by Fed. R. App. P. 3. Smith v. Barry, 502 U.S. 244, 247-50 (1992). Smith v. Barry does not apply to Ikner's motions filed on January 22 because they were not filed within the ten days for filing a notice of appeal. None of the documents filed by Ikner during the thirty-day period following sought to extend the time to file a notice of appeal due to excusable neglect, as the district court so noted in its order of February 16.

3

The district court applied the appropriate standards for determining whether excusable neglect existed, <u>United States v. Clark,</u> 51 F.3d 42 (5th Cir. 1995), and <u>Pioneer Investment Services Company v. Brunswick</u>, 507 U.S. 380 (1993).  The only reason offered by Ikner in both of his motions for an extension to seek new counsel, not additional time to file a notice of appeal, was that his counsel had a number of other commitments demanding of his time.

In Ikner's responses to the government's motion to dismiss, he offers no reason for the failure to file a timely notice of appeal other than counsel's "lack of understanding concerning the deadline for appeal."  However, counsel's ignorance of the rules generally does not constitute excusable neglect.  <u>Clark</u>, 51 F.3d at 43-44.  Where the rule at issue is unambiguous, here, the rule being that a notice of appeal in a criminal case must be filed within ten days, "a district court's determination that the neglect was inexcusable is virtually unassailable."  <u>Halicki v. Louisiana Casino Cruises, Inc.</u>, 151 F.3d 465, 469 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1005 (1999).

The district court did not abuse its discretion in its determination of no excusable neglect.  <u>Clark</u>, 51 F.3d at 43-44.  The government's motion to dismiss Ikner's appeal is GRANTED, and Ikner's appeal is DISMISSED for lack of appellate jurisdiction.

Fowler argues that the search and seizure of the automobile was unconstitutional because the circumstances surrounding the

search and seizure exceeded the scope of a routine traffic stop. He argues that the consent was thus tainted as the product of the initial illegality. First, he argues that the stop was invalid because the obscured tag and weaving were not violations of Mississippi law. He argues that even if the stop was authorized to investigate traffic violations, it exceeded that scope and resulted in a de facto arrest. He contends that Sanders lacked reasonable suspicion. He contends that the computer check took too long. He argues that he was under a de facto arrest when he gave consent and so his consent must be analyzed to evaluate its validity following an illegal detention.

Fowler contends that Sanders admitted that the obscured tag was not a violation of Mississippi law. Sanders never testified that the obstructed tag did not violate Mississippi law. The portion of the record cited by Fowler was a discussion concerning whether the bent and beat up condition of the front tag was a violation, and not the obstructed rear tag, which Sanders clearly testified was a violation. Fowler also argues that going from one lane to another on a four lane interstate highway with a central median is not a violation of Mississippi law. Fowler's actions in twice leaving his lane, crossing the center lane and returning to cross the outer right "fog" lane, clearly violate Mississippi law and justified the stop. United States v. Thomas, 12 F.3d 1350, 1366 (5th Cir. 1994).

5

Fowler next contends that even if the stop was valid, Sanders's questioning, coupled with the extraordinarily long wait for the computer check of Fowler's license, extended the scope of the stop beyond that necessary to investigate the alleged offenses involved in the initial stop. The defendants' car was stopped at 11:16 p.m. Sanders returned to his squad car at 11:19 to run a check on Fowler's license. While waiting for the identification to be confirmed, Sanders returned to the defendants' car at 11:23, returned their identification, and engaged them in conversation. Sanders told them that he was having their identification run and if it checked out they would be free to leave. At 11:24, eight minutes after the initial stop, Sanders asked them if they had anything illegal in the car such as guns or drugs, and they said no. Sanders then asked if they would mind if he checked the car out. Both defendants consented.

The record shows that the request to search was made and consent was given while the detention was still justified by the facts justifying the initial stop. See United States v. Zucco, 71 F.3d 188, 190-91 (5th Cir. 1995) (rejecting argument of de facto arrest from roadside detention based on elapsed time of nine minutes from permissible initial stop to the consent to search while waiting for the computer check); Shabazz, 993 F.2d at 434 (detention did not exceed original scope because officers were still waiting for results of computer check at the time they received consent to search the car).

6

Because the initial stop was valid, and because the detention did not exceed the original scope of the stop, Fowler's consent to search the car was not tainted by any prior illegality. Fowler does not challenge the voluntariness of his consent in and of itself, but only as part of his argument that the consent was tainted by the alleged prior illegalities.

Fowler argues that the evidence of his knowledge of the presence of the cocaine in the car is insufficient. He contends that the government produced no evidence of nervousness greater than that of any person stopped by the police; that there was no evidence of reluctance or hesitancy to answer questions; that there were no inconsistent or implausible statements; and that his possession of large sums of cash was consistent with having been gambling at a casino.

Applying the factors listed in United States v. Ortega-Reyna, 148 F.3d 540, 544 (5th Cir. 1998), the change from lack of nervousness when Sanders was searching the trunk where Ikner had directed him, to Fowler's chest-heaving nervousness when the search left the "safe" area and turned to the area of the rear quarter panel provides convincing evidence of Fowler's guilty knowledge.

The factor of refusal or reluctance to answer questions also supports the finding of knowledge. Although neither defendant flatly refused to answer any questions, their hesitation to answer the question of whose car they were in, and their failure to identify the owner of the car is indicative of guilty knowledge.

7

Their inconsistent statements also support a finding of knowledge. Their claim not to have a screwdriver to remove the material obscuring the tag was proved false when Sanders searched the trunk and discovered the tool kit. Also, they initially told Sanders something which he understood to mean they had not had success at the casino. Sanders confronted them with this statement when he discovered the large sums of cash in their pockets, and they claimed that they had said they had just broken even. Sanders interpreted their statements as inconsistent with possession of the $6,274 he found on them.

The implausible explanation of how they came to be in possession of a car containing half a million dollars worth of cocaine base also supports a finding of knowledge. The defendants' story to Sanders was that they were in a friend's car and had driven from Fort Worth to gamble at a casino in Tunica, Mississippi, had dropped this friend off in Durant, and were going to return to Fort Worth the next day. For the story to be true, they would have to have a friend who was willing to loan them a car containing $500,000 of cocaine base, to drive a thousand miles round trip across several state lines. When pressed by defense counsel to state what he had seen in the car to indicate that the defendants knew there were drugs in the car, Sanders testified that he "thought it was kind of odd that someone would loan out a car with that much crack in it."

8

The defendants' possession of a large amount of cash supports a finding of guilty knowledge. As Sanders testified, the cash was bundled in a manner utilized by drug dealers to facilitate quick counting of the money. Although they claimed that it was money they won at the casino, they never claimed an interest in it after given notice of seizure.

The evidence was sufficient to support Fowler's conviction for possession with intent to distribute cocaine base.

Fowler argues that Sanders's testimony about the money being wrapped in rubber bands like drug dealers do, about it seeming odd to him that someone would loan out the car containing that much crack, and the testimony of Cox (the backup officer) about the street value of the cocaine and his observations of nervousness amounted to inadmissible criminal profile evidence and improper expert testimony.

Fowler's evidentiary arguments are reviewed for plain error because he did not make these specific arguments in his objections in the district court. United States v. Polasek, 162 F.3d 878, 883 (5th Cir. 1998).

The testimony in this case is distinguishable from that in United States v. Williams, 957 F.2d 1238 (5th Cir. 1992), cited by Fowler. The government merely told the jury that the defendants banded a portion of their money in a manner consistent with drug dealers and appeared to become nervous when the search focused on the area of the car containing the drugs. Such testimony is not

drug courier profile evidence and is properly admitted.  See United States v. Buchanan, 70 F.3d 818, 833 n.16 (5th Cir. 1995); United States v. Washington, 44 F.3d 1271, 1283 (5th Cir. 1995); United States v. Speer, 30 F.3d 605, 610 n.3 (5th Cir. 1994).

Fowler argues that there was no evidence that the witnesses followed a "process or technique," and that there was no finding by the trial court that the probative value outweighed the prejudicial impact and whether the opinion was "helpful to the jury."  No scientific "process or technique" is involved in observing an individual's behavior; just training and experience.  Evidence that drug dealers band money in $1,000 stacks is more probative than prejudicial and is helpful to the jury since their common experience would not include such a fact.  See Buchanan, 70 F.3d at 832-33.

Fowler argues that Sanders made a non-responsive answer during cross-examination in which he stated that the car was not Ikner's and "[t]hat's why it would seem odd to me to loan a car out with that much crack cocaine in it."  No objection was made.  This statement was preceded by defense counsel pressing Sanders to give any evidence, including how he "felt" and his "opinion"  and asking what about the situation would lead him to conclude that "laymen" would know there were drugs in the car.  This testimony was an opinion demanded by defense counsel, nor is it any different from an opinion that persons engaged in a $30,000 crack deal would not have an uninvolved spectator present.  Buchanan, 70 F.3d at 832.

Fowler challenges Officer Cox's testimony about the street value of the crack cocaine seized from the car. Cox testified, without specific objection by Fowler, that he was specially trained in drug investigations, including undercover cocaine buys, and had bought cocaine just a week and a half prior to testifying. "[A]n experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business." Washington, 44 F.3d at 1283 & n.45.

The trial court did not plainly err in permitting any of the challenged expert testimony.

Fowler argues that in closing argument, the prosecutor improperly commented upon his failure to testify at trial and made an improper appeal to passion and prejudice.

In his opening statements, Ikner's counsel promised proof about the friend who loaned them the car in opening statement. The prosecutor was merely pointing out that the defense story promised in opening had not been delivered. A prosecutor may comment on the failure of the defense to follow through on opening statement promises. United States v. Zanabria, 74 F.3d 590, 592-593 (5th Cir. 1996); United States v. Mackay, 33 F.3d 489, 495-96 (5th Cir. 1994). The prosecutor's argument was not an impermissible comment on Fowler's failure to testify.

Fowler argues that the government made an impermissible inflammatory argument. "[A]ppeals to the jury to act as the conscience of the community are permissible, so long as they are

11

not intended to inflame." <u>United States v. Fields</u>, 72 F.3d 1200, 1208 (5th Cir. 1996). This court held that it was not improper for the prosecutor to argue about the drug problem the defendants' action were creating in the neighborhood. <u>Id</u>. In <u>United States v. Brown</u>, 887 F.2d 537, 542 (5th Cir. 1989), this court held that the prosecutor's argument that drugs were a terrible thing and were ruining society and that it was up to the jury to do something about it by returning a verdict of guilty did not rise to the level of an improper law and order appeal.

MOTION TO DISMISS IKNER'S APPEAL GRANTED AND IKNER'S APPEAL DISMISSED; FOWLER'S CONVICTION AFFIRMED.