IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-41099

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM BRUCE HARE;
JOHN TIMOTHY MAJORS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Texas

_____

August 5, 1998

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

On May 22, 1996, a jury convicted William Bruce Hare and John Timothy Majors for their

possession of marihuana with the intent to distribute and their participation in a conspiracy to

distribute marihuana. On appeal, Hare and Majors challenge both the validity of their convictions and

the duration of their sentences. We affirm.

I. Factual and Procedural Background

On November 16, 1995, Roy Thomas Simmons and Gregory Alexander Mouton were

arrested for the possession of approximately five pounds of marihuana. This marihuana was

discovered by two Texas Department of Public Safety (Texas DPS) Troopers in connection with a

routine traffic stop on Interstate 10. In an effort to minimize their criminal liability, Simmons and

Mouton agreed to help the authorities arrest Hare, who had supplied them with the five pounds of marihuana seized during the traffic stop.

After Simmons and Mouton described their prior dealings with Hare, Sergeant Moore of the Texas DPS Narcotics Service ordered the surveillance of Hare's residence. While observing Hare's residence, Sergeant Greer, also of the Texas DPS Narcotics Service, saw Hare and Majors driving a blue Buick and saw Tamorra Lynn Pinkston driving a white Dodge Intrepid. Moore also convinced Mouton to telephone Hare and initiate negotiations regarding an additional purchase of marihuana. These calls were recorded by Moore with Mouton's permission. On November 18, 1995, Hare agreed to deliver 50 pounds of marihuana to Mouton the following day in Orange, Texas. Moore and Greer then decided to intercept this shipment and enlisted the aid of other law enforcement officers to carry out their plan.

On November 19, 1995, Hare spoke with Mouton and confirmed the delivery of the Marihuana in Orange. Pinkston also contacted Mouton and told him that she and Hare would be traveling in a white car. This information was relayed to Greer, who, along with other officers involved in the operation, was positioned on Interstate 10 between Hare's residence and Orange. Greer eventually spotted Hare and Pinkston traveling in the white Dodge that he had previously seen at Hare's residence. He also identified Majors and a female companion following in the blue Buick that he had earlier observed at Hare's residence.

Greer decided to follow Majors and advised Sergeant Gary Porter, a member of the Jefferson County Narcotics Task Force, to follow Hare. While following Hare and Pinkston in Jefferson County, Porter noticed the Dodge twice weave out of its lane. Porter then stopped and detained Hare and Pinkston.

2

Shortly after Porter stopped Hare and Pinkston, Greer observed the Buick being driven by Majors weave onto the shoulder of the highway. Greer then informed DPS Trooper Daniel Young, who was also following Majors, that he had observed Majors commit a traffic violation. Young then twice witnessed the Buick leave its lane. After the last of these violations, Young and Greer stopped Majors in Orange County.

During the stop, Greer and Young questioned Majors and his companion about their destination and received conflicting answers. They also noticed that Majors was extremely nervous. When Greer and Young asked for consent to search the Buick, Majors refused. Greer then decided to detain Majors until Porter, who commanded a drug-sniffing dog, could arrive. This detention lasted approximately ten minutes. When Porter arrived, he immediately used his canine to sniff around the perimeter of the Buick. The dog alerted on the trunk of the car. When the officers searched the trunk, they discovered approximately 50 pounds of marihuana. After Young arrested Majors, the officers searched the interior of the Buick. This search produced 200 tablets of a narcotic known as "ecstasy."

The following day, Moore obtained a search warrant for Hare's residence. The search turned up marihuana in the kitchen. In the master bedroom, the officers executing the warrant found ledgers linking Hare to the distribution of over 660 pounds of marihuana, additional marihuana, and a firearm on a nightstand.

On February 8, 1996, a federal grand jury returned a superseding indictment charging Hare, Majors, and Pinkston with conspiracy to distribute marihuana. In addition, Hare and Majors were each charged with possession with the intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1). The defendants were tried together before a jury and Hare and Majors were found guilty

3

on both counts.[1]  The district court sentenced Hare to concurrent sentences of 300 months imprisonment for his conspiracy conviction and 120 months imprisonment for his possession conviction.  Majors received concurrent sentences of 51 months imprisonment for each conviction.

## II.  DISCUSSION

A.  Defendant Hare

1.  *The Admissibility of Hare's Eleven-Year-Old Conviction for Possession with the Intent to Distribute Marihuana*

Hare challenges the district court's admission of an eleven-year-old conviction for possession with intent to distribute marijuana.  Although Hare has conceded that under Fed. Rule Evid. 404(b), his prior conviction was relevant to the issue of his intent, he claims that the district court erred when deciding that the probative value of his eleven-year-old conviction was not substantially outweighed by its prejudicial and cumulative effect.  Fed. R. Evid. 403; *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).  We review a district court's decision to admit evidence under Rule 403 for an abuse of discretion.  *United States v. Chavez*, 119 F.3d 342, 346 (5th Cir. 1997).

According to Hare, the probative value of his prior conviction was slight, if for no other reason than its age.  *Cf.* Fed. R. Evid. 609(b) (adopting a ten-year time limit, absent unusual circumstances, on the use of prior convictions for impeachment purposes).  With respect to the cumulative effect of this evidence, Hare contends that this additional evidence of his intent was entirely unnecessary because the Government's remaining evidence of guilt was overwhelming.  With respect to the prejudicial effect of his prior conviction, Hare notes that some risk of prejudice from a conformity inference remained even after the district court properly instructed the jury that it could

---

[1] The district court dismissed the conspiracy charge against Pinkston, but she was found guilty of possession with the intent to distribute marihuana.

only consider this evidence as it related to Hare's intent. Accordingly, Hare concludes that his prior conviction should have been excluded because its probative value was substantially outweighed by its prejudicial and cumulative effect.

Hare's contention is not without merit. The Government had ample evidence of Hare's guilt, including the physical evidence linking Hare to a large quantity of drugs, the audiotapes of Mouton's conversations with Hare regarding the delivery of a large quantity of marihuana, and the testimony of Mouton and the law enforcement officers who arrested Hare and searched his residence. Moreover, the probative value of the prior conviction on the question of intent was slight and its introduction into evidence, even when accompanied by a limiting instruction, did pose some risk of unfair prejudice given that Hare was once again charged with possession with the intent to distribute marihuana. Nevertheless, we need not decide whether the district court abused its discretion when admitting Hare's prior conviction, for Hare is caught in a catch-22: Even if the district court improperly admitted his prior conviction because it was unnecessarily cumulative in light of the overwhelming nature of the evidence against him, the remaining evidence convinces us that that the error was harmless. *See, e.g.*, *United States v. Tomblin*, 46 F.3d 1369, 1388 (5th Cir. 1995) (applying harmless error analysis when a district court abused its discretion under Rule 403). The overwhelming evidence against Hare in this case points to one inescapable conclusion: Hare is guilty of the crimes charged in the indictment and the jury could not have found otherwise. Accordingly, Hare is not entitled to a new trial on the basis of the district court's decision to admit into evidence his eleven-year-old conviction.

2.       *The Authenticity of Six Audio Tapes Made By Moore*

Hare argues that the district court abused its discretion under *United States v. Buchanan*, 70

5

F.3d 818, 827 (5th Cir. 1995), by admitting into evidence four audio tapes of statements he made to Mouton and two recordings of messages he left on Mouton's voicemail. According to Hare, these tapes were not properly authenticated. For each audio recording to be properly authenticated, the Government was required to show: (1) the operator's competency; (2) the fidelity of the recording equipment; (3) the absence of material alteration; and (4) the identification of relevant sounds or voices. *Id.* The district court may, however, admit a recording in the absence of these requirements if it is convinced that the recording reproduces the auditory experience. *Id.* We have carefully reviewed the record and have determined that the requirements of *Buchanan* were met through the comprehensive testimony of Moore and Mouton. Thus, the district did not abuse its discretion in admitting these six recordings.

3. *The Sufficiency of the Government's Notice of Intent to Seek a Career Offender Enhancement*

Hare asserts that he lacked "notice of the Government's intent to use a prior conviction for career offender enhancement," in part, because "he was not personally served." In order for a district court to enhance a sentence under 21 U.S.C. § 841, "the United States attorney [must] file[] [before trial] an information with the court (and serve[] a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851; *see United States v. Gonzales,* 79 F.3d 413, 426 (5th Cir. 1996). These requirements were met in this case. Hare's counsel was served in accordance with the requirements of Section 851 and the Government filed its "Notice and Information of Prior Convictions for Purpose of Increased Punishment" pursuant to 21 U.S.C. § 851(a)(1) on January 16, 1996, well before Hare's trial commenced on May 13, 1996.

4. *The District Court's Calculation of the Quantity of Marihuana Attributable to Hare*

6

Hare complains that the district court erred when calculating the amount of marihuana to be used for sentencing purposes because the evidence underlying the district court's conclusion that he was responsible for distributing 1,040.75 pounds of marihuana during the conspiracy was unreliable. We will set aside a district court's drug quantity calculation for sentencing purposes only if it is clearly erroneous. *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996).

The district court adopted the PSR's findings with respect to the quantity of marihuana only after verifying the evidentiary support for the PSR's calculations. This support was in the form of sworn "trial testimony as to the facts surrounding the defendant's possession [of] all but 150 pounds" of the 1040.75 pounds attributed to Hare by the PSR. Further, the "[i]nformation regarding the [remaining] 150 pounds was obtained from . . . Moore and Majors during subsequent post-trial interviews." The district court did not clearly err by crediting this evidence. 5. *T h e Propriety of a Leader and Organizer Offense Level Enhancement*

Hare contends that the district court clearly erred when finding that he was a leader or organizer of a criminal activity involving at least five participants under U.S.S.G. § 3B1.1(a), which provides for a four level increase under these circumstances. Hare does not contest the district court's findings that at least five people participated in Hare's criminal activity. Instead, he argues that he was not a leader or organizer because Pinkston's testimony at the sentencing hearing established that Hare sometimes took orders from others. The short answer to Hare's claim is that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1 n.4. Further, the PSR and trial and sentencing testimony provided more than adequate support for the district court's conclusion that Hare:

> [R]ecruited accomplices, he set prices, controlled individuals, he used others, including Majors and Stanley as couriers, gave them instructions, participated in, and

7

co-authored drug notes, paid them for travel, travel expenses, simply paid them for their services, [and] directed Mouton to use coded signals to communicate while conducting transactions.

Accordingly, the district court's finding that Hare was a leader or organizer was not clearly erroneous. *Cf.* U.S.S.G. § 3B1.1 n.4 (identifying the factors relevant to a leader or organizer finding); *United States v. Ayala*, 47 F.3d 688, 689-90 (5th Cir. 1995) (noting that leadership status depends on such factors as the defendant's exercise of decision making authority, the nature of the defendant's participation in the commission of the offense, and the degree of control and authority the defendant exercised over others).

6.     *The Propriety of an Offense Level Enhancement for Possession of a Firearm*

Hare asserts that the district court clearly erred in assessing a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for firearm possession because the Government failed to establish a nexus between the firearm and the drug trafficking offense. To prove the required connection between the weapon and the offense, the Government must show that the weapon was found in a location where drugs or drug paraphernalia were also stored or where part of the transaction occurred. *United States v. Flucas*, 99 F.3d 177, 179 (5th Cir. 1996). In this case, Hare's PSR stated that the law enforcement officers searching Hare's residence found a nine millimeter handgun in plain view on a night stand in Hare's bedroom in close proximity to marihuana, scales, packaging materials, ledgers reflecting drug sales, and a large sum of currency. In addition, the PSR also indicated that Mouton saw a nine millimeter handgun in Hare's bedroom when he obtained five pounds of marihuana from Hare on November 16, 1995. Thus, this is not a case where "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 n.3 (suggesting that the enhancement would not be applied if, for example, "the defendant, arrested at his residence, had an unloaded hunting rifle in

8

the closet."). Instead, the information in the PSR adequately established the required nexus between the weapon and the drug trafficking offense under *Flucas* and the district court was entitled to adopt the facts in the PSR because Hare made no effort to challenge these findings at sentencing. *United States v. Cisneros*, 112 F.3d 1272, 1279 (5th Cir. 1997).

7.      *The District Court's Denial of Hare's Motion to Sever*

Finally, Hare contends that the district court erred in denying his motion to sever. This Court reviews a district court's denial of a motion to sever for abuse of discretion. *United States v. Moser*, 123 F.3d 813, 828 (5th Cir. 1997). The general rule is that "persons indicted together should be tried together, especially in conspiracy cases." *Id*. A defendant has the burden to "show that he suffered specific and compelling prejudice against which the district court could not provide adequate protection, and that this prejudice resulted in an unfair trial." *United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir. 1994) (citations omitted). Hare has done nothing to meet this burden. Instead, he has simply asserted that "the jurors were unable to separate his wrongdoing from the greater wrongdoing of his codefendants" because of the joint trial. Thus, Hare is not entitled to relief on this claim as he has utterly failed to demonstrate specific and compelling prejudice resulting in an unfair trial.

B.  Defendant Majors

1.      *The Constitutionality of the Stop and Search of Major's Automobile*

On appeal, Majors argues that the marihuana found in his car should have been suppressed because Young's decision to stop him for an alleged traffic violation was a pretext for conducting a search of the car for marihuana. This argument, however, is foreclosed by the Supreme Court's decision in *Whren v. United States*, 116 S. Ct. 1769 (1996). Majors also contends that the evidence

9

of the Marihuana should have been suppressed because his detention pending the arrival of Porter and the drug-sniffing dog was unreasonable in scope and was not supported by reasonable suspicion.

On appeal, this court accepts the trial court's factual findings at a suppression hearing unless they are clearly erroneous or influenced by an incorrect view of the law. *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). The ultimate determination of Fourth Amendment reasonableness is reviewed *de novo*. *United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996).

There is no question that Young had probable cause to stop Majors based on the traffic violations he had observed while following Majors. *Whren*, 116 S. Ct. at 1772. Accordingly, Majors' principal contention is that the duration of his detention was unreasonable under the Fourth Amendment. Under Majors' interpretation of Fourth Amendment, Young was required to issue Majors a citation or release him once he had checked Majors' license and proof of insurance and ownership. We disagree.

At the time of the stop, Young and Greer had a reasonable suspicion that Majors was involved in the delivery of marihuana. Young knew that Hare had agreed to provide Mouton fifty pounds of marihuana in Orange that day, that Mouton and Simmons had witnessed Majors deliver drugs on prior occasions, and that the Buick had been seen at Hare's residence and was traveling on the highway leading to Orange. *See Alabama v. White*, 496 U.S. 325, 330 (1990) (holding that an anonymous tip that a car contained cocaine provided an officer with the reasonable suspicion required to stop that automobile); *cf. United States v. Sharpe*, 470 U.S. 675, 683 n.3 (1985) (holding that a DEA agent had a reasonable suspicion that a driver of a car was involved in marihuana trafficking when the agent testified: 1) that the vehicle was being driven in an area known to be frequented by drug traffickers; 2) that the vehicle was of a type frequently used to transport drugs, appeared to be

10

heavily loaded, and had its windows covered; and 3) that the driver began speeding when a marked police car began following him). This suspicion, moreover, was heightened by Majors' nervousness when being questioned and by the conflicting statements made by Majors and his companion. Thus, Young and Greer possessed enough information to justify the detention of Majors pending the arrival of Porter and his drug-sniffing dog.

Moreover, so long as Young was "diligently pursu[ing] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant," the duration of Majors' detention was reasonable under the Fourth Amendment. *Sharpe*, 470 U.S. at 686. These requirements were met in this case. According to the district court, Majors was detained for ten minutes before Porter arrived with his canine and began conducting a perimeter sniff of the Buick. Thus, the troopers "diligently pursued" this means of investigation. *Sharpe*, 470 U.S. at 686 (upholding a twenty-minute detention); *see also United States v. Zucco*, 71 F.3d 188, 191 (5th Cir. 1995) (holding that a nine-minute detention was not a de facto arrest). Further, given their heightened suspicion that Majors was transporting marihuana, Greer and Young were justified in asking Porter to have his canine sniff the exterior of the car. The sniffing of the perimeter of the Buick by the dog was "likely to confirm or dispel their suspicions quickly" and it was necessary to detain Majors until the perimeter sniff was completed. *Sharpe*, 470 U.S. at 686; *cf. Terry v.Ohio*, 392 U.S. 1, 28 (1968) (allowing an officer to pat down the exterior of a person's clothing when questioning fails to dispel the officer's reasonable suspicion that the person may be armed). Under these circumstances, the duration of Majors' detention was reasonable under the Fourth Amendment.

When combined with the information underlying their reasonable suspicion that Majors was transporting marihuana, the alert by Porter's drug-sniffing dog provided Young and Greer with

11

probable cause to search the trunk of the Buick. *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995). Contrary to Majors' suggestion, Greer and Young did not need a warrant to conduct this search. *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993). Further, once Young and Greer discovered the marihuana in the trunk, they had probable cause to arrest Majors. Thus, the warrantless search of the interior of the Buick was permissible under the Fourth Amendment. *New York v. Belton*, 453 U.S. 454 (1981). Accordingly, the district court properly denied Majors' motion to suppress.

2.      *The Propriety of the District Court's Denial of Majors' Request for an Offense Level Reduction*

Majors claims that he is entitled to a reduction in his offense level because the evidence adduced at trial and sentencing indicated that he was merely a courier for Hare. He also contends that he accepted responsibility for his actions in a timely manner. A district court's findings that a defendant was not a minor participant in an offense and failed to accept responsibility for his actions will be upheld unless clearly erroneous. *United States v. Burian*, 19 F.3d 188, 192 (5th Cir. 1994); *United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir. 1994).

a.      *Minor Participant*

In order to be a minor participant entitled to a reduction in offense level, Majors needed to show that he was "substantially less culpable than the average participant." *Zuniga*, 18 F.3d at 1261. A mere courier may be substantially less culpable than the average participant in a drug operation when he is "recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2 n.2. The evidence before the district court, however, indicated that Majors had helped Hare deliver drugs on at least three occasions before he was arrested on November 19th. Further, Majors was transporting almost fifty pounds of marihuana when he was arrested on

12

November 19th.  This is not "a small amount of drugs."  Given these facts, the district court did not clearly err in determining that Majors was not a minor participant in the conspiracy.

b.      *Acceptance of Responsibility*

A finding that a defendant accepted responsibility after contesting his guilt at trial will be rare.  U.S.S.G. § 3E1.1 n.2.  In this case, Majors did not even attempt to accept responsibility for his actions for a substantial period of time following his conviction.  Instead, he told his probation officer that he did not have any knowledge of the marihuana found in the trunk of the Buick and that the DPS Troopers had altered the evidence to secure his conviction.  This is not an acceptance of responsibility.  *See United States v. Watson*, 988 F.2d 544, 551 (5th Cir. 1993); *United States v. Brigman*, 953 F.2d 906, 908-09 (5th Cir. 1992).  Thus, the district court did not clearly err when it determined that Majors was not entitled to a reduction in offense level for his purported acceptance of responsibility.

5.      *The Effect of the Sentencing Range Specified in the Indictment and Quoted by the Magistrate at Arraignment*

Quoting from the caption above Count III of the superseding indictment, which stated that Majors faced a maximum sentence of five years imprisonment under 21 U.S.C. § 841(b)(1)(D), the magistrate conducting Majors' arraignment incorrectly informed him that he faced up to five years imprisonment if convicted of violating 21 U.S.C. § 841(a)(1).[2]  Majors claims that he was prejudiced

---

[2]  Although it is apparently the "custom" in the Beaumont Division of the Eastern District of Texas to include information regarding a defendant's punishment range in the caption of an indictment, we can see no reason why this practice should be utilized when a defendant is accused of violating 21 U.S.C. § 841(a)(1).  After all, proof of quantity is not an element of this offense.  *See United States v. Montes*, 976 F.2d 235, 240 (5th Cir. 1992).  Further, even though a defendant charged with a violation of § 841(a)(1) is on notice that "the district court is not bound by the quantity of drugs mentioned by the indictment" and that his sentence will be calculated under guidelines based on the quantity of drugs attributed to him at sentencing, *United States v. Sarasti*,

13

by this incorrect statement of his potential sentence because it prevented him from making a fully informed decision to plead not guilty. Consequently, he asserts that his conviction and sentence should be vacated or, in the alternative, that he should receive a reduction in his offense level for accepting responsibility for his actions because he "probably" would have pleaded guilty had he been properly informed that he faced a potentially longer sentence.

We are unpersuaded that the magistrate's incorrect statement of Major's maximum sentence caused Majors any harm. To begin with, we note that Majors received a sentence of less than five years imprisonment after pleading not guilty and being convicted at trial. Further, had Majors pleaded guilty, he would have received an identical sentence under the guidelines, except that he may have been able to secure a reduction for the acceptance of responsibility. Thus, Majors' only real complaint is that the magistrate's explanation of his maximum sentence cost him the opportunity to obtain a reduction in offense level by pleading guilty and accepting responsibility for his criminal actions.

Majors' claim that he is entitled to a reduction in offense level because of the magistrate's error at arraignment rings hollow for several reasons. To begin with, Majors does not even claim that he would have pleaded guilty but for the magistrate's incorrect statement of his sentence. Instead, he merely suggests that he "probably" would have pleaded guilty had he known he faced a potentially lengthier period of incarceration. Of course, Majors' inability to state with certainty that he would have pleaded guilty reflects the underlying implausibility of his claim. As Majors himself knows, a criminal defendant is *less* likely to plead guilty when he faces a longer sentence. Finally, Majors' suggestion that he probably would have pleaded guilty in the face of a lengthier sentence is

869 F.2d 805, 806 (5th Cir. 1989), specifying a possible sentence in the caption based on a quantity of drugs that may not be used for sentencing can only create the type of confusion found in this case.

14

undermined by two additional facts: 1) that he did not make an effort to plead guilty once he discovered the magistrate's error; and 2) that he failed to accept responsibility for his actions in a timely manner even after his conviction. Thus, we conclude that under these circumstances, Majors has not established that he was prejudiced by the incorrect maximum sentence referred to in the caption of the indictment and quoted by the magistrate at arraignment. Accordingly, Majors is not entitled to a reversal or a reduction in his sentence.[3]

III.

For the foregoing reasons, we AFFIRM.

---

[3] We have carefully reviewed Majors' remaining claims and conclude that they are without merit.