UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-51132

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

v.

TERRY CONLENZO-HUFFMAN,

                              Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas,
Waco Division.
USDC No. 6:07-cr-73

Before GARZA and ELROD, Circuit Judges, and HICKS, District Judge.[*]

PER CURIAM:[**]

Appellant Terry Conlenzo-Huffman appeals the district court's denial of his motion to suppress. We affirm.

## I. BACKGROUND

In the district court below the parties stipulated the following facts.

On January 17, 2007, Commander Joe Davis of the Robertson County Sheriff's Department received a tip that Appellant Huffman would be in Calvert,

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Rule 47.5.4.

Texas that day driving a blue Buick Park Avenue with a missing hubcap, and that Huffman would be in possession of a substantial amount of cocaine. That tip was provided by a confidential informant ("CI") who had provided reliable tips to Davis in the past. Prompted by the tip, Davis traveled to Calvert on January 17th to pursue Huffman; in doing so, he asked for and received the assistance of Calvert Police Chief Joe Cheatham. Davis asked Cheatham to locate and stop Huffman on a traffic violation if possible. Cheatham spotted Huffman as a passenger in a vehicle matching that described by the CI. Although Huffman owned the Buick, driving it was an acquaintance of his named Joey Bowen; a third individual occupied the back seat.

Observing that neither Huffman nor his passenger were wearing seatbelts, Cheatham stopped the vehicle and asked the occupants to exit. Although he complied, Huffman refused to step away from the vehicle, but rather insisted on remaining in the area between the front seat and the open passenger door. Huffman was also observed reaching into the passenger compartment for various items. Cheatham asked Bowen for permission to search the vehicle. Stating that he could not provide such permission because he was not the vehicle's owner, Bowen declined. Cheatham thus sought permission to search the vehicle from Huffman, the owner, who also declined.

Bowen had a valid driver's licence, and Huffman provided proof of automobile insurance. Further, a computer check did not reveal any outstanding warrants as to any of the Buick's occupants. Cheatham issued Bowen and Huffman citations for failing to wear seatbelts. He next told Huffman that he was free to leave, but Huffman chose to remain.

Based on the information provided by the CI, the officers' suspicion that the Buick contained narcotics was not quickly dispelled. Unable to obtain consent to search the vehicle, the officers sought a narcotics dog to conduct a "sniff test" of the vehicle. Because the narcotics dog belonging to the Calvert Police Department was not "certified," the officers sought the use of the dog

belonging to the City of Bryan, located thirty-five miles away. That dog eventually arrived on scene. Upon examining the vehicle, the dog signaled the presence of narcotics inside. The stop lasted one hour and twenty minutes. It was stipulated below that "much of the delay in the stop was attributable to [Huffman], who refused to comply with officers' orders to step away from the vehicle and was verbally abusive." A subsequent search of the vehicle yielded approximately 82.7 grams of cocaine.

In agreeing to stipulate the above facts, Huffman sought "to avoid the needless time, expense and inconvenience of trial, but to preserve his appellate rights on the [c]ourt's denial of his Motion to Suppress." Huffman moved to suppress the evidence found in his vehicle, which the district court denied on July 19, 2007. On July 26, 2007, the district court held a bench trial on the stipulated facts. The district court found Huffman guilty of possession with the intent to distribute in excess of 50 grams of cocaine, after which it sentenced Huffman to life in prison. Huffman appeals only the district court's refusal to suppress the evidence found in his vehicle.

## II. DISCUSSION

Huffman argues that, based on the stipulated facts, "the scope of the investigative detention and seizure lasted longer than was necessary to effectuate the purpose of the stop," and therefore his detention was unconstitutionally prolonged, and the search of his vehicle, illegal. In evaluating the propriety of a district court's suppression ruling, we review questions of law de novo and findings of fact for clear error. See United States v. Cano, 519 F.3d 512, 515 (5th Cir. 2008). Because the facts on which the district court based its suppression ruling are not in dispute, we face only the task of determining de novo whether Huffman's detention was unconstitutionally prolonged.

Pursuant to the Supreme Court's seminal decision in Terry v. Ohio, 392 U.S. 1 (1968), we have concluded that "[t]he stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." United

States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004). Under Terry, we employ a two-part test to determine the legality of police investigatory stops. We "first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." Id. Huffman does not challenge the validity of the initial stop, as it was clearly justified: Cheatham observed him violating a traffic law.

Under the second prong of the Terry test we must determine whether the length of Huffman's detention was "reasonably related to the circumstances that justified the stop, or to dispelling [the officers'] reasonable suspicion developed during the stop." Id. With regard to the duration of a detention, the Supreme Court has stated:

> While it is clear that the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion, we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. Much as a "bright line" rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.

United States v. Sharpe, 470 U.S. 675, 685 (1985) (citations and internal quotation marks omitted). The court interpreted the Terry reasonableness requirement to mean that:

> In assessing whether a detention is too long in duration to be justified as an investigative stop, . . . it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

Id. at 686 (1985); see also United States v. Hare, 150 F.3d 419, 427 (5th Cir. 1998) ("[S]o long as Young was diligently pursuing a means of investigation that was likely to confirm or dispel his suspicions quickly, during which time it was

4

necessary to detain the defendant, the duration of Majors' detention was reasonable under the Fourth Amendment." (citations and internal quotation marks omitted)).

The evidence does not support Huffman's contention that the officers unreasonably detained him. First, Huffman stipulated that "much of the delay in the stop was attributable to [Huffman], who refused to comply with officers' orders to step away from the vehicle and was verbally abusive." Thus, he implicitly concedes that the officers cannot be faulted for the entire length of the investigation.

Second, although such details were not specifically stipulated to, Huffman's own explanation as to why the officers' investigation was prolonged actually helps demonstrate why its duration was not unreasonable. At Huffman's trial, Commander Davis explained that while he asked the Calvert Police Department for permission to use their narcotics dog, he was notified that the Calvert dog was "not certified," and that an officer with the Calvert Police was "trying to retrain the dog and . . . was not comfortable with that particular dog." Consequently, the officers sought the assistance of the Bryan Police Department, thirty-five miles away, which eventually lent the officers its narcotics dog. These facts suggest that the officers obtained a capable narcotics dog as quickly as possible. Thus, Huffman has "presented no evidence that the officers were dilatory in their investigation." Sharpe, 470 U.S. at 687. Indeed, he fails to even so allege.

Rather than alleging a lack of investigatory diligence, Huffman simply argues that the length of his detention per se was a Fourth Amendment violation. According to Huffman, "[t]he police do not have the right to pick and choose which narcotics trained dog to use while a citizen and his property are subject to a lengthy detention . . . ." Huffman cites no authority to support this bald declaration.

We acknowledge that Huffman's detention was unusually lengthy, but this fact does not alone establish a Fourth Amendment violation. To be sure, we have recognized that:

> a detention may be of excessively long duration even though the officers have not completed and continue to pursue investigation of the matters justifying its initiation. . . . A prolonged investigative detention may be tantamount to a de facto arrest, a more intrusive custodial state which must be based upon probable cause rather than mere reasonable suspicion.

United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993). However, we have also stated that "The removal of the suspect from the scene of the stop to police headquarters usually marks the point at which an investigative stop becomes a de facto arrest." United States v. Martinez, 808 F.2d 1050, 1055 (5th Cir. 1987).

After they issued Huffman the citation, the officers told him he was free to leave. Thus, the stop subsequent to that point amounted to a seizure of his vehicle rather than of Huffman himself. This fact alone does not categorically foreclose Huffman's Fourth Amendment argument. See United States v. Place, 462 U.S. 696, 705, 708-09 (1983) ("The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent. . . . [W]hen the police seize luggage from the suspect's custody, we think the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause."). It does, however, suggest that the officers sought to use the most minimally intrusive means in dispelling or confirming their suspicions. See Sharpe, 470 U.S. at 685 (investigation must be "minimally intrusive . . . to be justifiable on reasonable suspicion").

More importantly, unlike in cases where courts have found detentions unreasonably lengthy, see, e.g., Place, 462 U.S. at 709, here Huffman stipulated that "much" of the delay in the stop was the result of his own recalcitrant and insolent behavior. Huffman argues that the district court placed excessive

emphasis on this concession, and argues before us that "even if [he] had been completely cooperative and compliant, the prolonged delay caused by the police choosing which drug detecting dog to use . . . was constitutionally unreasonable." Huffman, however, does not explain how we are to determine what percentage of the investigation's duration is apportionable to the officers' conduct alone. Further, the Supreme Court has made clear that case law such as Place is inapposite where officers do not unnecessarily prolong detention. See Sharpe, 470 U.S. at 685. As explained above, we have no reason to believe the officers were dilatory in their investigation of Huffman's vehicle, and Huffman does not even attempt to provide one. Thus, given the specific facts of this case, we have no basis on which to conclude that the officers took an unconstitutionally long time to complete their investigation.

Based on Huffman's recalcitrance, his suspicious behavior at the scene, and the reliable tip from the CI, the officers, even after issuing Huffman and Bowen citations, had continuing reasonable suspicion that criminal activity was afoot. In light of the stipulated facts, the officers' continued detention of Huffman's vehicle was constitutionally permissible because, as far as we can tell, the officers were diligent in attempting to confirm or dispel their suspicion that Huffman was in possession of narcotics.

The judgment of the district court is AFFIRMED.