# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00012-CR

**Charles Eric Dwinal, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-16-0352-SB, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

After the police initiated a traffic stop of Charles Eric Dwinal, he was charged with one count of possession of a controlled substance (methamphetamine) with intent to deliver in an amount between 4 and 200 grams, with one count of possession of a controlled substance (cocaine) with intent to deliver in an amount between 4 and 200 grams, and with one count of unlawful possession of a firearm. *See* Tex. Health & Safety Code §§ 481.102(3)(D), (6) (listing cocaine and methamphetamine as substances included in "Penalty Group 1"), .112(a), (d) (providing that person commits offense by possessing "with intent to deliver a controlled substance listed in Penalty Group 1" and that offense is first-degree felony if amount of controlled substance is between 4 and 200 grams); Tex. Penal Code § 46.04(a), (e) (prohibiting felon from possessing firearm and stating that offense is third-degree felony). Further, the indictment contained enhancement paragraphs for the controlled-substance charges alleging that Dwinal had previously been convicted of the felony

offense of burglary of a habitation. *See* Tex. Penal Code § 30.02(a), (c)(2) (listing elements of offense of burglary of habitation and providing that offense is second-degree felony); *see also id.* § 12.42 (elevating permissible punishment range for repeat felony offenders). After being charged, Dwinal filed a motion to suppress. The district court convened a hearing on the motion to suppress and later issued an order denying the motion. Following that ruling, Dwinal entered into a plea agreement regarding the methamphetamine charge. Under the terms of the agreement, Dwinal reserved the right to appeal the suppression ruling and agreed to enter a plea of guilty for the methamphetamine charge in exchange for the State recommending that Dwinal be sentenced to 30 years' imprisonment and for the State agreeing to abandon the enhancement allegation and to allow the district court to consider his guilt in the remaining two charges when assessing his punishment. *See id.* § 12.45 (allowing person, with consent of State, to "admit during the sentencing hearing his guilt of one or more unadjudicated offenses and request the court to take each into account in determining sentence" and explaining that "[i]f a court lawfully takes into account an admitted offense, prosecution is barred for that offense"). After accepting Dwinal's plea, the district court imposed its sentence in conformity with the terms of the plea agreement and rendered its judgment of conviction accordingly. Dwinal filed a motion for new trial asserting that the district court erred by denying his motion to suppress, and the motion was overruled by operation of law. In two issues on appeal, Dwinal asserts that the district court erred by denying his motion to suppress and by failing to grant his motion for new trial. We will affirm the district court's judgment of conviction.

## BACKGROUND

After Dwinal was charged with possession of methamphetamine with intent to deliver, he filed a motion to suppress the evidence and testimony regarding the items seized from his vehicle after Officer Dustin Henderson initiated a traffic stop and to suppress evidence of testing performed on the seized items, and the district court convened a hearing on the motion.

During the hearing, Officer Henderson, Officer William Pierce, and Dwinal all testified, and a recording of the traffic stop was admitted into evidence. In his testimony, Officer Henderson related that he decided "to conduct a traffic stop" after observing Dwinal commit two traffic violations. Next, Officer Henderson recalled that when he approached the vehicle to talk with Dwinal about the violations, he smelled "[b]urned" "marijuana in the vehicle" and "asked [Dwinal] to exit the vehicle." Moreover, Officer Henderson stated that Dwinal "was real nervous," that "he was real pale," that he looked "scared," and that "his carotid artery on his neck [was] pulsating really fast."

In his testimony, Officer Henderson explained that when he went back to the car to talk with the female passenger, he no longer smelled marijuana, that he later asked Dwinal about the smell of marijuana, that Dwinal denied that there was any marijuana in the car, that Dwinal became "more upset about the situation," and that Dwinal started gesturing with his hands. In addition, Officer Henderson recalled that he requested that a canine unit be sent to the scene. Moreover, Officer Henderson explained that Dwinal's "temper was escalating" and that Dwinal "began to pace around."

Furthermore, Officer Henderson testified that the canine unit arrived approximately 23 minutes after the traffic stop began and that the canine officer (Frost) alerted to the presence of

3

illegal drugs in the car by scratching at the back bumper. Next, Officer Henderson stated that after Frost alerted, he performed "a probable cause search of the vehicle," that he started the search in the trunk, that he found no contraband but smelled marijuana in the trunk, that he then searched the passenger compartment, and that he found "marijuana residue up on the dash of the driver's side" and found the following inside bags located in the "front passenger's seat floorboard": two pistols, multiple marijuana pipes and grinders, "[s]ix small marijuana joints," "a used methamphetamine pipe," a "container with marijuana shake in it," "digital scales," and a clear bag containing more than 100 grams of methamphetamine. In addition, Officer Henderson explained that they transferred the car to the police station to continue the search in a safer location and that the additional search revealed a bag containing "27 grams of cocaine" as well as a third pistol under the driver's seat.

When describing why he did not search the car when he first smelled marijuana, Officer Henderson explained that he did not feel comfortable performing a search because he "was outnumbered" by Dwinal and the passenger, because he learned during the traffic stop that Dwinal had a history of "assaultive weapons" and drug use, and because he no longer smelled marijuana when he returned to the car to talk to the passenger. During his cross-examination, Officer Henderson admitted that the only evidence of the presence of marijuana that he observed prior to calling for a canine unit was the smell of marijuana that he noticed when he first interacted with Dwinal and that he did not believe that he had probable cause to search the car before the dog alerted. Further, Officer Henderson testified during his cross-examination that the alert by the dog provided him with probable cause to search the entire vehicle.

During Officer Henderson's testimony, a recording from the dashboard camera in Officer Henderson's patrol car was admitted into evidence. The recording is generally consistent

4

with Officer Henderson's testimony. In addition, the recording captures Dwinal refusing Officer Henderson's request to search the car.

After Officer Henderson finished his testimony, Officer Pierce was called to the stand. In his testimony, Officer Pierce explained that Officer Henderson contacted him and asked him to perform "a free air search" around the vehicle and that Frost alerted to the presence of narcotics by scratching on the trunk of the car. Moreover, Officer Pierce explained that drug dogs alert to the seams of a car, including the seams on the trunk, because that is where the odors emit from.

Once Officer Pierce finished his testimony, Dwinal was called to the stand and testified that he did not give permission for anyone to search his vehicle.

At the end of the hearing, the district court took the matter under advisement and later issued an order denying the motion to suppress. Following that ruling, Dwinal requested findings of fact and conclusions of law supporting the ruling, and the district court issued the following relevant findings and conclusions:

**Findings of Fact**

4. Trooper Henderson observed the driver's side window to be down and detected the odor of burnt marijuana coming from inside the passenger compartment of the vehicle.

. . . .

6. Trooper Henderson requested a K-9 unit to bring a trained dog to conduct a free-air sniff of the exterior of the vehicle.

. . . .

8. Trooper Pierce's dog "positively alerted" on the trunk of the vehicle.

5

. . . .

10. Trooper Pierce testified that his training included observing that when a smoke bomb releases smoke in an enclosed vehicle, smoke will emit from [] all seams of the door, hood, and trunk.

11. After the positive K-9 alert, Trooper Henderson searched the vehicle, beginning at the trunk of the vehicle where the K-9 alerted.

12. During his search of the trunk, Trooper Henderson again smelled marijuana, but did not locate any controlled substances.

[and]

13. Trooper Henderson searched the passenger compartment of the vehicle and located two (2) black bags in the front seat passenger floorboard [containing marijuana, cocaine, and methamphetamine].


**Conclusions of Law**

2. When Trooper Henderson detected the odor of marijuana, he had reasonable suspicion that another criminal offense had been committed and he was authorized to detain the vehicle for additional investigation. *Lambeth v. State*, 221 S.W.3d 831 (Tex. App.—Ft. Worth 2007[], pet. ref'd).

. . . .

4. When the K-9 "alerted" to the presence of narcotics, Trooper Henderson had probable cause to search the entire vehicle. *Levine v. State*, 794 S.W.2d 451 (Tex. App.—Amarillo 1990), pet. ref'd.

[and]

5. Because Trooper Henderson initially smelled burnt marijuana, the K-9 alerted to the presence of narcotics, and Trooper Henderson again smelled burnt marijuana while searching the trunk of the vehicle, Trooper Henderson had probable cause to search the entire passenger compartment of defendant's vehicle. *Levine*, id.; *U.S. v. Marshall*, 878 F.2d 161 (5th Cir. 1989).

6

## STANDARD OF REVIEW AND GOVERNING LAW

In this case, Dwinal challenges the district court's denial of his motion to suppress and his motion for new trial. A trial court's denial of a motion for new trial is reviewed under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded by rule on other grounds as stated by State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

Similarly, appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion, *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013), and view the evidence "in the light most favorable to the trial court's determination," *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). Moreover, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Appellate courts review

7

"*de novo* 'mixed questions of law and fact' not falling within this category." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (quoting *Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, J., concurring)). "The ultimate determination of whether probable cause exists is subject to *de novo* review on appeal." *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009). In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory. *Story*, 445 S.W.3d at 732.

Under the Fourth Amendment, "a warrantless search of either a person or property is considered per se unreasonable subject to a 'few specifically defined and well established exceptions.'" *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (internal quotations omitted). Reasonableness is the touchstone of the Fourth Amendment, and the reasonableness of a search or seizure "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). "When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant." *Marcopoulos v. State*, 492 S.W.3d 773, 777 (Tex. App.—Houston [1st Dist.] 2016, pet. granted). "One exception to the requirement to obtain a warrant before conducting a search is known as the automobile exception." *Id.* "Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). Probable cause "exists when facts and circumstances within the officer's knowledge or about which he has reasonably trustworthy information are

sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed." *Lopez v. State*, 223 S.W.3d 408, 414 (Tex. App.—Amarillo 2006, no pet.); *see Boyett v. State*, 485 S.W.3d 581, 595 (Tex. App.—Texarkana 2016, pet. ref'd). "Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion, but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *Smith v. State*, 58 S.W.3d 784, 792 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

The Supreme Court has addressed the scope of a warrantless search of an automobile on more than one occasion. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 347 (2009); *United States v. Ross*, 456 U.S. 798, 825 (1982). In *Ross*, the Supreme Court explained that "[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause"; that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search"; and that "[w]hen a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." 456 U.S. at 821, 823, 825. Furthermore, the Court clarified that "[t]he scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it

9

may be found." *Id.* at 824. The Court also provided the following examples to illustrate when warrantless searches are and are not permissible:

> Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

*Id.* In a subsequent case, the Court summarized the holding from *Ross* as authorizing "a search of any area of the vehicle in which the evidence might be found" "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 347; *see also Osban v. State*, 726 S.W.2d 107, 110, 111 (Tex. Crim. App. 1986) (explaining that "[i]f probable cause to search part of a vehicle is not inevitably probable cause to search the entire vehicle this is because there is not enough evidence to warrant a man of reasonable caution in suspecting that contraband or evidence of a crime can be found throughout the entire vehicle," theorizing that "probable cause to believe that a sword is located somewhere in an automobile does not give the police probable cause to search a coffee can found in the vehicle. . . . because one is not likely to find a sword in a coffee can," and determining that search of trunk was proper after discovery of contraband and cash in passenger compartment), *overruled on other ground by Heitman v. State*, 815 S.W.2d 681, 685, 690 (Tex. Crim. App. 1991).

## DISCUSSION

In his first issue on appeal, Dwinal argues that his motion to suppress should have been granted because Officer Henderson's search of the vehicle was an unreasonable search. *See*

U.S. Const. amend IV (providing that "[t]he right . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause").[1] In his second issue, Dwinal contends that the district court erred by denying his motion for a new trial based on his arguments regarding the propriety of the search. Dwinal addresses these issues jointly in his brief, and we will similarly consider the issues together.

When asserting that the search was improper, Dwinal does not argue that Officer Henderson's decision to call a canine unit to perform "a free air search" was unreasonable under the circumstances, that there was an unreasonable delay between when Officer Henderson requested the assistance of a canine unit and when the unit arrived, that the search of the two bags was improper even if there had been probable cause to search the passenger compartment, or that the contraband did not belong to him.[2] Indeed, Dwinal concedes that the initial traffic stop was permissible and

---

[1] In his brief, Dwinal also contends that Officer Henderson's search violated the Texas Constitution. *See* Tex. Const. art. I, § 9 (stating that "[t]he people shall be secure . . . from all unreasonable seizures or searches" and that "no warrant to search any place, or to seize any person or thing, shall issue without . . . probable cause). However, Dwinal does not assert that the protections against unreasonable searches provided by the Texas Constitution are greater than those provided by the federal Constitution or set out a separate analysis under the Texas Constitution. In fact, all of the cases that Dwinal relies on in his brief are either federal or from another state. *See State v. Gray*, 157 S.W.3d 1, 5 n.2 (Tex. App.—Tyler 2004) (noting that defendant contended that seizure violated federal and Texas Constitutions but declining to address Texas claim because defendant did "not provide separate authority or argument for his state constitutional claims"), *aff'd*, 158 S.W.3d 465 (Tex. Crim. App. 2005); *cf. Hanston v. State*, 517 S.W.3d 112, 116-22 (Tex. Crim. App. 2017) (discussing similarity between federal and Texas constitutional provisions prohibiting unreasonable searches and seizures and determining that Texas Constitution provides no greater protection to cell-phone records than Fourth Amendment does); *Crittenden v. State*, 899 S.W.2d 668, 673 n.8 (Tex. Crim. App. 1995) (noting that courts should "not read Article I, § 9 differently than the Fourth Amendment in a particular context simply because [they] *can*").

[2] Although we need not address the matters, we note that the recording admitted into evidence shows that Officer Pierce responded within 22 minutes of the initiation of the traffic stop and chronicles Dwinal telling the police that the drugs belonged to him and not to the passenger. *See*

11

that the alert by Frost gave Officer Henderson the authority to search the trunk. However, Dwinal contends that the search of the passenger compartment was unreasonable for several reasons. First, Dwinal contends that the search of the passenger area was improper because although Officer Henderson testified that he smelled marijuana when he first interacted with Dwinal at the car, Officer Henderson dispelled any suspicion that he might have had regarding the presence of illegal drugs inside the car when he returned to the car and could no longer smell marijuana.[3] Next, Dwinal argues that Officer Henderson did not have the authority to extend the permissible search of the trunk to the passenger area because he found no contraband in the trunk of the car that might have provided probable cause to search the passenger area of the vehicle. In addition, Dwinal urges that the search was also improper because he did not consent to a search of his car. Accordingly, Dwinal contends that by "continuing to search into the passenger area without re-establishing probable cause," Officer Henderson "conducted an invalid search" and that, therefore, the evidence obtained from the passenger compartment was inadmissible. *See* Tex. Code Crim. Proc. art. 38.23 (providing

---

*Sims v. State*, 98 S.W.3d 292, 294, 297 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (affirming denial of motion to suppress in traffic-stop case where canine unit arrived within 20 minutes of citation being given).

[3] As support for his argument that the marijuana odor did not establish probable cause, Dwinal also points to the portion of Officer Henderson's testimony in which he testified that he felt like he needed to call the canine unit "[t]o justify probable cause." As will be explained in the opinion later, probable cause to search a vehicle can be established when an officer smells marijuana coming from a vehicle during a traffic stop. Moreover, we note that "[a]n officer's subjective belief as to whether probable cause exists does not control; instead the test is objective." *See State v. Rivera*, No. 14-94-01260-CR, 1996 WL 11186, at *2 (Tex. App.—Houston [14th Dist.] Jan. 11, 1996, no pet.) (not designated for publication); *see also Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (stating that "[t]he subjective intent or motivations of law enforcement officials is not taken into account when considering" whether "the totality of the circumstances" established presence of probable cause to search).

that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case").

Because Dwinal drove the car that was searched, the only remaining factor to consider when deciding whether the automobile exception applied is whether Officer Henderson had probable cause to believe that Dwinal's car contained contraband. As set out above, Officer Henderson testified and the district court found that when Officer Henderson approached the car and interacted with Dwinal, Officer Henderson smelled the odor of marijuana emanating from within the car's passenger compartment. The court of criminal appeals and several intermediate appellate courts have repeatedly explained that the smell of marijuana originating from inside a vehicle establishes probable cause to perform a warrantless search the vehicle. *See Parker v. State*, 206 S.W.3d 593, 597 n.11 (Tex. Crim. App. 2006); *Marsh v. State*, 684 S.W.2d 676, 679 (Tex. Crim. App. 1984); *Bogan v. State*, No. 02-15-00354-CR, 2016 WL 1163725, at *2 (Tex. App.—Fort Worth Mar. 24, 2016, pet. ref'd) (mem. op., not designated for publication); *Rocha v. State*, 464 S.W.3d 410, 418 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd); *Harris v. State*, 468 S.W.3d 248, 255 (Tex. App.—Texarkana 2015, no pet.); *Jordan v. State*, 394 S.W.3d 58, 64-65 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Williams v. State*, No. 14-01-01250-CR, 2002 WL 31426293, at *2 (Tex. App.—Houston [14th Dist.] Oct. 10, 2002, no pet.) (not designated for publication). Moreover, we have been unable to find any authority supporting Dwinal's suggestion that probable cause to believe that there was contraband in the car would have been "dispel[led] . . . when [Officer Henderson] approach[ed the car] a second time . . . and no longer detect[ed] the odor of marijuana."

13

Accordingly, although the district court did not decide the suppression motion based solely on Officer Henderson's testimony regarding the marijuana odor originating from inside the car, the decision to deny the motion could have been supported by that testimony and the district court's accompanying finding in light of the cases referenced above.

Instead of performing a search at that moment, Officer Henderson "chose a less intrusive method of search by requesting" the assistance of a canine unit after Dwinal refused to consent to a search of the vehicle. *See McBride v. State*, No. 04-15-00567-CR, 2016 WL 3773602, at *2 (Tex. App.—San Antonio July 13, 2016, no pet.) (mem. op., not designated for publication); *see also Lambeth*, 221 S.W.3d at 837 (noting that "[t]he smell of marijuana gave the troopers reasonable suspicion that another offense had been committed and justified appellant's continued detention for a canine search after the purpose of the initial stop was complete"); *Taylor v. State*, 20 S.W.3d 51, 55 (Tex. App.—Texarkana 2000, pet. ref'd) (explaining that "[t]he odor of marihuana alone provides reasonable suspicion of criminal activity to justify a continued detention until a canine sweep can be performed"). Moreover, as discussed previously, the district court found that Frost alerted to the trunk of the car, which Dwinal concedes established probable cause to perform a warrantless search. *See Briseno v. State*, No. 04-15-00566-CR, 2016 WL 3181544, at *5 (Tex. App.—San Antonio June 8, 2016, no pet.) (mem. op., not designated for publication) (stating that "[w]hen a K-9 alerts to the presence of drugs, police may then conduct a warrantless search"); *Fisher v. State*, 481 S.W.3d 403, 413 (Tex. App.—Texarkana 2015, pet. ref'd) (noting that alert by canine raised reasonable suspicion "to the level of probable cause sufficient to search the inside of the vehicle without a warrant"); *Branch v. State*, 335 S.W.3d 893, 901 (Tex. App.—Austin 2011, pet.

14

ref'd) (providing that "[t]he law is well established that as soon as a drug-detection dog alerts on a car, officers have probable cause to search the car without a warrant"). However, as discussed above, Dwinal urges that the alert only established "probable cause to search the trunk area" and that because no narcotics were discovered during the search of the trunk, the extension of the warrantless search to the passenger compartment was not justified by probable cause.[4]

As an initial matter, we note that intermediate appellate courts in Texas have determined that the establishment of probable cause to believe that drugs were located inside a car through means other than an alert by a canine officer, including through a police officer's observation of the smell of marijuana, justified the search of a trunk because the existence of

---

[4] As support for his argument that Officer Henderson could not extend his search to the passenger compartment, Dwinal refers to *United States v. Hare*, 150 F.3d 419 (5th Cir. 1998), *overruled on other grounds by United States v. Doggett*, 230 F.3d 160, 163-64 (5th Cir. 2000). In particular, Dwinal notes that *Hare* also involved a situation in which an officer initiated a traffic stop and requested a canine unit to sniff the exterior of the car, in which the canine unit alerted to the presence of narcotics in the trunk, and in which the officers searched the passenger compartment and found illegal drugs after searching the trunk. 150 F.3d at 423. However, Dwinal notes that unlike in the current case, the officers found narcotics in the trunk and then proceeded to search the passenger compartment and further highlights that the appellate court explained that the alert by the "drug-sniffing dog provided" the officers "with probable cause to search the trunk," that the officers "had probable cause to arrest" the defendant after discovering "the marihuana in the trunk," and that "the warrantless search of the interior" was permissible as a search incident to arrest. *Id.* at 427. In light of the analysis from *Hare*, Dwinal contends that in the absence of any contraband being discovered in the trunk and in the absence of an alternative basis for searching the passenger compartment, there was no justification for expanding the search.

However, although the opinion in *Hare* discusses how the search of the interior of the car was permissible as a search incident to arrest, the court was not called upon to determine whether the officers would have been able to search the interior if no contraband had been found in the trunk. Similarly, the opinion in *Hare* does not address whether the search of the interior would have been permissible if probable cause to search the interior had been otherwise established as in this case where Officer Henderson detected the odor of marijuana in the passenger compartment during the traffic stop before calling for a canine unit.

15

probable cause authorized a warrantless search of the entire car. *See Gallegos v. State*, No. 05-95-00772-CR, 1999 WL 463369, at \*1, \*3 (Tex. App.—Dallas July 9, 1999, no pet.) (not designated for publication) (noting that police officer smelled marijuana while talking with defendant, that police officer initially looked for source of smell "in the passenger compartment," that officer then searched trunk even though there was "no evidence the officer detected any odor of marijuana from the trunk," and that officer found "twelve blocks of green marijuana" in trunk and concluding that "[o]nce the officer had probable cause to search the car for marijuana, he was authorized to search every part of the vehicle, including the trunk and containers found therein"); *Parks v. State*, 858 S.W.2d 623, 626 (Tex. App.—Fort Worth 1993, pet. ref'd) (noting that police officers searched trunk of defendant's car after searching passenger compartment even though officers did not find "controlled substances . . . in the passenger compartment" and deciding that search of trunk was supported by probable cause "based on all the surrounding circumstances" even though officer "did not personally see [defendant] place the bag and box in the trunk"); *Levine*, 794 S.W.2d at 451, 452, 454 (determining that search of trunk was supported by probable cause when, among other things, police officer noticed "a strong smell of burnt marijuana" emanating from defendant after defendant sat in patrol car to get out of cool weather while his license and registration were verified, when officer found no marihuana "in the pat-down search of" defendant, and when officer elected to search trunk rather than passenger compartment because "probable cause justified the search of every part of the vehicle that might conceal the marihuana," including trunk, and because "[a]ny part of the vehicle may be first searched" once probable cause exists). In light of the analyses from those cases, it would be hard to reconcile the outcome of those cases with a conclusion in this case that

16

the probable cause to believe that illegal drugs were inside Dwinal's car established by Frost's alert to the back of the car could not serve as probable cause to search the passenger compartment as well as the trunk.

However, even assuming for the sake of argument that the limitation urged by Dwinal is correct and that an alert to the trunk of a car by a canine unit, without more, does not establish probable cause to search the interior compartment of the car,[5] *cf. United States v. Seals*, 987 F.2d 1102, 1107 n.8 (5th Cir. 1993) (commenting that "if officers have probable cause to believe that contraband is in only one part of a car, then they are limited to that area" but that if "officers have probable cause to believe that contraband is located somewhere in a car, but they don't know exactly where, then they can search the entire vehicle" and determining that "[s]ince it was never explained whether the initial alert by the dog encompassed the entire area of the car including the trunk, we will consider that the alert only applied to the passenger compartment"), we would still conclude that

---

[5] On appeal, Dwinal points to *United States v. Nielsen* as support for the idea that the absence of any contraband in the trunk should have foreclosed any search of the passenger compartment. 9 F.3d 1487 (10th Cir. 1993). In that case, the officer initiating a traffic stop testified that he "smelled *burnt* marijuana" when talking with the defendant. *Id.* at 1488, 1491. When discussing whether this observation justified the search of the trunk, the appellate court explained that "[t]he smell of burnt marijuana would lead a person of ordinary caution to believe the passenger compartment might contain marijuana" but noted that the "search of the passenger compartment revealed no marijuana or related contraband." *Id.* at 1491. Accordingly, the court determined that "under the circumstances" there was not "a fair probability that the *trunk* contained marijuana" and that "there was no probable cause to search the trunk." *Id.*

As an initial matter, we note *Nielsen* did not involve a situation in which a canine officer was called to the scene and alerted to the presence of illegal drugs in the car. Moreover, the court in *Nielsen* determined that the smell of marijuana that the officer detected when interacting with the defendant would support an inference that there might be marijuana in the passenger area, and as discussed previously, the smell of marijuana observed by Officer Henderson provided him with probable cause to search the passenger compartment, which is where the illegal drugs were discovered.

17

Officer Henderson's search of the passenger compartment was supported by probable cause because additional information known to Officers Henderson and Pierce contributed to the existence of probable cause.

In this case, Officer Henderson testified that Dwinal acted nervous and scared during their interaction and that Dwinal became angry after Officer Henderson stated that he was calling a canine unit. *Cf. Green v. State*, 256 S.W.3d 456, 465 (Tex. App.—Waco 2008, no pet.) (concluding that police officer had probable cause to search truck, in part, because defendant acted nervous and "nervously look[ed] at his truck"). Moreover, in addition to finding that Frost "positively alerted" to the trunk, the district court referenced Officer Pierce's testimony that smoke will seep out of a car at the seams, including the seams to the trunk. In addition, the district court found that Officer Henderson personally noticed the smell of marijuana coming from inside the passenger compartment when he interacted with Dwinal and noticed the smell again during his search of the trunk even though he did not find any illegal narcotics in the trunk.

Bearing in mind the analysis from the Supreme Court's opinion in *Ross*, viewing the record in the light most favorable to the district court's determination, and considering the totality of the circumstances, we believe that all of the facts and circumstances were sufficient to warrant a prudent person to believe that illegal drugs were present in the passenger compartment and to justify the search of the passenger compartment or any part of Dwinal's vehicle that might conceal the drugs. Accordingly, we conclude that the district court did not abuse its discretion by denying the suppression motion after deciding that probable cause existed to search the passenger compartment and overrule Dwinal's first issue on appeal. Having determined that the district court did not abuse

its discretion by denying the suppression motion, we must also conclude that the district court did not abuse its discretion by denying Dwinal's motion for new trial and, therefore, overrule Dwinal's second issue on appeal.

## CONCLUSION

Having overruled both of Dwinal's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Field, and Bourland

Affirmed

Filed:   November 3, 2017

Do Not Publish

19